### RICHARDSON v. PERRIN.

1. An equitable petition alleged, in brief, as follows: The parties entered into a contract giving to the plaintiff an option to purchase certain land, the lines of which were agreed upon, except one; and as to it the beginning point was fixed, and its general direction agreed upon, so that it should intersect with a certain line, and thus its terminus could be readily ascertained. In reducing the contract to writing, by mutual mistake of law on the part of the parties and also of the scrivener the description inserted did not carry out the intention of the parties, and was too vague to sufficiently describe the land. For reasons set out, the owner of the land would obtain an unconscientious advantage if the plaintiff were not permitted to reform the contract. *Held,* that the petition was not subject to general demurrer.

 (a) The petition was not subject to the special demurrer filed, on the grounds therein contained.

2. No such negligence on the part of the plaintiff appeared on the face of the petition as to render it demurrable on that ground.

3. If an option to purchase the land was given to the plaintiff, and within such time he elected to purchase it and offered the purchase-money to the defendant, who refused to carry out the contract, the expiration of the time for the exercise of the option would not destroy the right of the plaintiff to file an equitable petition to reform the contract as to an insufficient description of the land.

4. An allegation that the plaintiff had bargained the land covered by the contract for a profit of $1,400, but could not carry out the sale if the defendant could take advantage of the mistake in reducing the contract to writing, tended to show that a gross injustice would be done

to the plaintiff, and that the defendant would obtain an unconscientious advantage, and was not demurrable as irrelevant and immaterial.

JANUARY 12, 1912.

Equitable petition. Before Judge Meadow. Elbert superior court. September 20, 1910.

G. G. Perrin and L. L. Richardson entered into a written contract, which contained the following: "Said second party has this day rented from first party, for the years 1905-6-7-8 and 9, the following lands: all that part of lands on the public road leading to Elberton from Carpenter's Mill [beginning] at a certain piece of woods just south of C. W. Morris's home, thence running a westerly direction to the pasture fence on west side of pasture, and thence following the line a southerly direction and back to the public road, and then down said road to the beginning point." After certain other terms, not material here, the contract continued: "In addition to the foregoing, the following special agreement is entered into between the parties: It is further agreed that should said L. L. Richardson choose to purchase 200 acres on the upper end of the above lands at the end of three years from the first of this lease, he has the privilege of doing so at the price of fifteen dollars ($15.00) per acre, said Richardson to pay $1,-000.00 cash, balance as agreed upon at the time." This contract was signed by both parties.

Richardson filed an equitable petition against Perrin, seeking to have the contract so reformed as to express the true agreement of the parties as to the land covered by the option. He alleged, among other things, as follows: Prior to the execution of the written contract, it was distinctly agreed between the parties as to what were the exact boundaries of the land, except as to precisely where the line beginning at a certain piece of woods just south of C. W. Morris's house and running thence in a westerly direction to the pasture fence on the west side of the pasture should intersect the line between the land of Perrin and that of W. J. Eavenson, so as to cut off exactly 200 acres. In the absence of a survey this point of intersection could not be fixed; but the point from which this line was to begin and the direction it was to take were agreed upon; and no mistake could be made in thus ascertaining the exact tract covered by the option. Perrin owned a tract of land containing over 400 acres, and the line de-

scribed as beginning at a piece of woods just south of Morris's house, and running in a westerly direction to the pasture fence on the west side of the pasture, was the line that would separate the land covered by the option and the other land of Perrin. The contract of option, as agreed upon between the parties, covered the following tract of land: Beginning at the piece of woods just south of C. W. Morris's house, and running in a westerly direction to the pasture fence on the west side of the pasture, intersecting the line between G. G. Perrin and W. J. Eavenson at the point where 200 acres would be cut off the southern end of the whole Perrin tract by following the lines from this point of intersection between said G. G. Perrin and the adjacent landowners, viz.; W. J. Eavenson,——Adams, and the estate lands of J. W. Tibbets, to the public road leading from Elberton to Carpenter's Mill, thence down said road to the beginning point, in 315th district G. M., county of Elbert, State of Georgia, containing 200 acres. The contract was written by T. W. Campbell, a bookkeeper, who was not acquainted with such work, "and, by accident and mistake of both parties thereto, did not sufficiently describe the premises so optioned, but that petitioner in good faith made this contract of lease and option to cover the premises described, . . and it was agreed between him and the said G. G. Perrin, and that the insufficiency of description was not discovered by either party until said G. G. Perrin refused to accept the purchase-price and make petitioner a deed and when the matter was referred to their respective counsel. Petitioner alleges that there was an honest mistake of law as to the effect of said contract of lease and option on the part of both contracting parties, because of its insufficient description, and this mistake operates as a gross injustice to this petitioner and gives an unconscientious advantage to said G. G. Perrin;" because the plaintiff would not have leased the land for the term and at the yearly rental agreed upon, without the option to buy at the expiration of three years, which was a part of the consideration of the lease; because further, he had made valuable improvements on the land, by building a storehouse at a cost of $100, and making other improvements not required of a lessee; and because of the fact that he bargained this 200 acres to a person named for the sum of $4,400, thereby making a clear profit of $1,400, to which he was justly entitled, and which he would have

received but for the insufficiency of description in the written contract, and the taking advantage thereof by Perrin. "Petitioner alleges that T. W. Campbell, the draftsman of the contract of lease and option, made a mistake of law in making this insufficient description of the premises so as to carry out the real intention of the parties, and out of this mistake a gross injustice has been done petitioner and an unconscientious advantage has been given said G. G. Perrin." Within the time fixed by the contract he tendered to the defendant the amount of the purchase-price and called on him to comply with the contract, which the defendant refused to do.

On demurrer the petition was dismissed. The plaintiff excepted.

*George C. Grogan,* for plaintiff.

*Samuel L. Olive,* for defendant.

LUMPKIN, J. (After stating the foregoing facts.)

1. The defendant, who was an owner of land, entered into a written contract with the plaintiff to lease to the latter certain land for five years, with an option on the part of the lessee to purchase 200 acres after the expiration of three years from the beginning of the lease. The plaintiff filed an equitable petition, seeking to compel the defendant to specifically perform the agreement to sell. It was held that the description of the land to be sold was too indefinite to authorize a decree of specific performance. *Richardson* v. *Perrin,* 133 *Ga.* 721 (66 S. E. 899). The plaintiff then filed the present petition, seeking to have the written contract so reformed as to express what he alleged was the actual agreement between the parties as to the description of the land to be sold. Construed as setting up a mistake of fact, the allegations of the petition were insufficient. It was not alleged distinctly that the parties intended to put any particular words of description into the contract and failed to do so by reason of accident or mistake, or that they did not know what was in the written contract, or what instructions were given by them to the scrivener as to putting some particular thing into the contract, which he omitted to do by accident or mistake. But construed as setting up a mistake of law, the petition was sufficient to withstand the grounds of the demurrer which were urged against it.

An honest mistake of law as to the effect of an instrument on the part of both contracting parties, when such mistake operates as a gross injustice to one, and gives an unconscientious advantage to the other, may be relieved in equity. Civil Code (1910), § 4576; *Rogers* v. *Atkinson,* 1 *Ga.* 12; *Dolvin* v. *American Harrow Co.,* 125 *Ga.* 699 (54 S. E. 706, 28 L. R. A. (N. S.) 785). *In Collier* v. *Lanier,* 1 *Ga.* 238, it was held: "Where an instrument is drawn, and executed, which professes and is intended to carry into execution an agreement, whether in writing or by parol, previously entered unto, but which, by mistake of the draftsman, either as to fact or law, does not fulfill, or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement." This principle as to a mistake of law in the draftsman has been codified in section 4577 of the Civil Code of 1910. See also *Wyche* v. *Greene,* 11 *Ga.* 159. It is not meant that if a person knows that a material portion of an agreement is omitted from the written contract, but relies on the parol promise of another to carry that part of the agreement into effect, he can afterwards have the instrument corrected by inserting such provision. *Ligon* v. *Rogers,* 12 *Ga.* 281. There is a clear distinction between adding provisions to a written contract by parol, and making a contract speak what the parties intended it should express, and thought it did legally express, when they executed it.

In the present case it was alleged, that all of the lines of the land covered by the option were agreed upon prior to the making of the written contract, save one, and it was to begin at a certain point and run in a westerly direction until it intersected with a line fence at a point which would include within the boundaries 200 acres; that this was sufficient to define the land; that the parties undertook to express in writing the contract, and both honestly believed that the description as written was sufficient to define such land; and that, by mutual mistake of law by both of the parties and the scrivener, the written contract did not express the actual contract by sufficiently describing the land thus agreed to be included in the option. The allegations were sufficient to withstand a general demurrer. Whether in some respects the petition may have been subject to special demurrer, so as to require more fullness of allegation, need not be considered. A special demurrer

was filed, attacking various paragraphs of the petition; but the petition and its paragraphs were not subject to be dismissed for any of the reasons set up therein.

2. No such negligence on the part of the plaintiff appears on the face of his petition as to authorize a dismissal on that ground. Civil Code (1910), § 4571. Some cases in this court have gone quite far in the direction of denying equitable relief to a party who claimed that he thought a certain provision or agreement was included in a written contract, but failed to read it without any sufficient excuse therefor. But they do not control this case, in which a mistake of law on the part of the parties to the contract and the draftsman is alleged.

3. It was urged, that, because the time for asserting the option had expired, there was no contract to reform, and the equitable petition seeking reformation was therefore demurrable. We can not concur in this position. If the contract should be reformed, it would stand as if originally so written, as between the parties. It was alleged that within the time prescribed by the contract the plaintiff elected to purchase the land, and tendered payment therefor, and that the defendant refused to carry out the contract. It is the exercise of the option, not the reformation of the contract, which must take place within the time limited, if the contract fixes a limit.

4. There was no error in refusing to strike from the petition the allegations in regard to the contract made by the plaintiff to sell the land at a profit of $1,400.00, and his inability to carry out such contract because of the refusal of the defendant to convey the land to him. This tended to show that the land was of greater value than that contracted to be paid for it, and that a gross injustice would be done the plaintiff, and the defendant would obtain an unconscientious advantage, if he were permitted to refuse to carry out the contract as made, and if it were not reformed.

*Judgment reversed. All the Justices concur, except Hill, J., not presiding.*