Argued January 18, decided January 30, rehearing denied February 27, 1912.

## HOWARD v. TETTELBAUM.

[120 Pac. 373.]

REFORMATION OF INSTRUMENTS—GROUNDS—MUTUAL MISTAKE.

1. Plaintiff and defendant were partners, plaintiff's duty being to keep the account books, which duty with defendant's consent, clerks were employed to perform, and shortly before they executed a dissolution agreement, transferring the business to defendant, it was discovered that a clerk was short in his accounts to the extent of $94.72, and it was afterwards

learned that a debtor had adjusted an account of $199.69 with the firm, which did not appear to have been accounted for by the clerk, and that sum was also considered as embezzled by the clerk. Preliminary to the dissolution and sale, a statement was prepared, showing the firm assets and liabilities, and the contract of sale provided that plaintiff should pay both amounts believed to have been embezzled, aggregating $294.41, which he did, and further provided that the firm did "hereby sell and transfer" to him all its right to the $294.41 "cash shortage," and that whatever sums he could recover of those items should be his individual property; but the day after the settlement it was discovered that the debtor had never settled with the firm for the item of $199.69 supposed to have been embezzled. *Held,* that plaintiff could have the contract of settlement and dissolution reformed, because of mutual mistake in assuming in the settlement that such item was embezzled.

REFORMATION OF INSTRUMENTS—CONTRACT—MUTUAL MISTAKE.

2. If, through mutual mistake as to a material fact, a written contract does not express the intention of the parties, equity will reform it, so as to make it do so.

REFORMATION OF INSTRUMENTS—ACCOUNTING—MISTAKE—DIRECTION IN EQUITY.

3. Equity has jurisdiction to correct a mutual mistake in the settlement of partnership accounts.

REFORMATION OF INSTRUMENTS—DEFENSES—NEGLIGENCE BY PLAINTIFF.

4. To bar equitable relief for mutual mistake, negligence by plaintiff contributing thereto must be so gross as to amount to a positive violation of legal duty, and plaintiff's conduct when the settlement was made with defendant, in concluding that the debt had not been paid for the firm, and that he had turned it over to the defaulting clerk, was not such negligence as would prevent him from reforming the contract of settlement by correcting the mistake, as defendant was not harmed thereby.

From Multnomah: JOHN B. CLELAND, Judge.

This is a suit by Alfred Howard against Max Tettelbaum to reform a written contract for the dissolution of a partnership. From a decree in favor of plaintiff, defendant appeals.    AFFIRMED: REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. Ralph R. Duniway.*

For respondent there was a brief over the names of *Messrs. Beach & Simon* and *Mr. Roscoe C. Nelson,* with an oral argument by *Mr. Nelson.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Alfred Howard and Max Tettelbaum were partners in an enterprise known as the Western Ruching & Trim-

ming Manufacturing Company. Under the terms of their agreement, Mr. Edward Tettelbaum, the defendant's father, was given personal supervision of the manufacturing establishment at a stated salary, and was authorized to fully represent the defendant, who was absent. The plaintiff, Howard, was assigned the duty of keeping the account books. With the consent of defendant, plaintiff engaged and paid clerks to do the bookkeeping. During the time between September 10 and November 20, 1909, one of these bookkeepers was short in his accounts, and, as the duty of keeping the books devolved upon the plaintiff, the latter agreed to pay the amount of such defalcation. A subsequent clerk, Mr. Faxon, first detected the shortage, and then experts were employed to ascertain the amount, which was at first thought to be $94.72. Afterwards it was learned that Fleischner, Mayer & Co. had adjusted an account of $199.69 with the Western Ruching & Trimming Manufacturing Company, and, the amount of this payment not appearing in the cash account or in the bank deposit, it was immediately concluded that this had also been embezzled, and the last-named amount was added to said shortage account. About January 3, 1910, some dissatisfaction having arisen in regard to the partnership, it was proposed that a settlement of the business be made, whereupon plaintiff sold his interest to defendant, as Howard claimed, on the basis of a fair inventory and ascertainment of the value of his interest. The proceedings leading up to the sale were as follows: An inventory was taken, a statement was prepared by the bookkeeper, showing the assets and liabilities of the concern, and a balance struck. The transaction is evidenced by a contract of dissolution and bill of sale, executed by plaintiff and defendant on the 6th of January, 1910, settling the partnership affairs and transferring Howard's interest in the business to Tettelbaum. This trade was effected by the parties upon the basis of

Howard paying the amount embezzled by the clerk ($94.72), and also the sum supposed to have been collected from Fleischner, Mayer & Co. ($199.69) making a total of $294.41, which amount was deducted from plaintiff's interest in the concern. According to the terms of the writing, Howard had the right to collect all of the latter sum from the defaulting clerk, for his individual benefit. The consideration for the sale, after deducting the above amounts and an additional sum of $150 for auditing the books, was stated in the written memorandum to be $189.04. The next day after the execution of this contract Howard ascertained from Fleischner, Mayer & Co.'s bookkeeper that the item of $199.69 had not been paid to the Western Ruching & Trimming Manufacturing Company in cash, but that in settling accounts it had been deducted from the amount the latter firm was then owing the former, and a balance paid to Fleischner, Mayer & Company upon a check. Defendant was informed of this fact, and requested to have the error corrected. All the facts relating to the mistake are set forth at length in the complaint, and they conform to the rule in *Sellwood* v. *Henneman*, 36 Or. 575 (60 Pac. 12.)

Counsel for defendant contends that there was an absolute sale made to Tettelbaum of Howard's interest in the manufacturing establishment for the consideration named in the contract, and that there was no mutual mistake. Tettelbaum does not appear to dispute that there was a misapprehension in regard to the collection of Fleischner, Mayer & Company's bill, but says, in effect, that it was the duty of plaintiff to keep the accounts straight, and that it was wholly the latter's fault if any error occurred. In testifying in defendant's stead, he said that he believed that the Fleischner, Mayer & Company's item had been collected in cash, for the reason that Howard had informed him to that effect; that the

first that he knew of anything to the contrary, or that there had been a mistake, was when he received the information that Fleischner, Mayer & Company's account had not been so paid. We see no real difference between the statements of the parties in this respect. They differ materially in their deductions from the main facts and vary in some details. The facts, which are not disputed, that a statement of the assets and liabilities was made out, and that plaintiff took about two days to examine the same to see if it were correct, indicate that the sale was made upon the basis of the matters shown in the statement, and not for a specified lump sum. The consideration named in the bill of sale being to a cent the exact amount of the balance of the statement and not an even amount of dollars, is an additional signification of the same basis of the trade.

Further, when we examine the latter part of the contract of settlement, we find therein the following:

"* * Said firm does hereby sell and transfer unto said Alfred Howard all its right and title it may have to recover said two hundred and ninety-four dollars and forty-one cents ($294.41) cash shortage, and said one hundred and fifty dollars ($150.00) claimed for auditing the books; and whatever sums said Alfred Howard can recover of those items are to be his individual property."

It should be remembered that the supposed shortage of the Fleischner, Mayer & Company's item of $199.69 is included in this claim so assigned. It must have been a mistake for the firm to assign to Howard a claim or account of which they had already had the benefit, and which had been fully adjusted, and should have passed into oblivion.

2, 3. Wherever, through mutual mistake as to a material fact, clearly shown, a written agreement does not correctly express the intention of the parties thereto, equity will grant relief by way of reformation, so as to make the erroneous expression in the memorial accord

with the actual intent. The jurisdiction of equity to correct a mistake in the settlement of partnership accounts has been often exercised, and is not disputed. *Powell* v. *Heisler,* 16 Or. 412 (19 Pac. 109) ; *Osborn* v. *Ketchum,* 25 Or. 352 (35 Pac. 972) ; *Nolan* v. *Hughes,* 51 Or. 187 (93 Pac. 362, 94 Pac. 504) ; *Smith* v. *Interior Warehouse Co.,* 51 Or. 578 (94 Pac. 508: 95 Pac. 499.)

4. The conduct of plaintiff in coming to the conclusion that the Fleischner, Mayer & Company's amount had been paid to him, and that he had turned the same over to the clerk, and assuming personal liability therefor, did not amount to such negligence as would deprive him of equitable relief. Defendant was not harmed in the least thereby, although he gained a temporary advantage. *Powell* v. *Heisler,* 16 Or. 412, 415 (19 Pac. 109) ; 2 Pomeroy, Equity Jurisprudence, § 856. Negligence, in order to bar equitable relief, in case of mutual mistake, clearly established, must be so gross and inexcusable as to amount to a positive violation of a legal duty on the part of the complaining party. 2 Pom. Eq. Jur. § 856; *Town of Essex* v. *Day,* 52 Conn. 483, 492, 493 (1 Atl. 620) ; *Albany City Savings Institute* v. *Burdick,* 87 N. Y. 40; *Lewis* v. *Lewis,* 5 Or. 169; *Meier* v. *Kelly,* 20 Or. 86, 94 (25 Pac. 73.)

In 2 Pomeroy, Equity Jurisprudence (3d ed.) § 867, note 4, the following language is used:

"Furthermore, although in the original mistake there is no element of immorality, yet afterwards, when the mistake is discovered, and the party benefited insists upon retaining its advantages, and refuses to voluntarily correct the error, but plants himself upon the strict legal rights which the erroneous writing gives him, there is but a very shadowy distinction between the immoral character of his conduct and that of the person who intentionally, by misrepresentations and concealments, induces another to enter into an agreement."

It would be inequitable to permit the defendant to permanently retain the advantage which he temporarily gained by the making of the mutual mistake adverted to.

We think that the pleadings and evidence fully warranted the findings and decree made by the trial court, and that the written instrument should be reformed and the mistake corrected. Therefore the decree of the lower court is affirmed.        AFFIRMED: REHEARING DENIED.