GENERAL MOTORS ACCEPTANCE CORPORATION, Appellant, v.
BAKER MANUFACTURING COMPANY, Appellee.

**REFORMATION OF INSTRUMENTS: Instruments Reformable—Warehouse Receipts.** Warehouse receipts may be reformed, for mutual mistake, against a holder who, in accepting said receipts, parts with no consideration. Especially is this true when the said holder is the owner of the property, and directed his own agent to warehouse the property.

**ACTIONS: Proper Calendar—Controlling Equitable Issue.** Equitable issues in law actions are properly transferred to and tried in equity, and pre-eminently so when they are controlling and determinative of the entire action.

Headnote 1. 34 Cyc. pp. 942 (1926 Anno.), 953, 958. Headnote 2. 38 Cyc. p. 1293.

*Appeal from Webster District Court.*—SHERWOOD A. CLOCK, Judge.

JANUARY 13, 1925.

THE action was begun at law, to recover of a warehouseman the value of certain automobiles for which plaintiff held warehouse receipts. The answer alleged a mutual mistake in the description of the cars in the receipts, and asked their reforma-

tion. Upon a trial of this issue in equity, the relief was granted, and the petition dismissed. The plaintiff appeals.—*Affirmed.*

*Mitchell, Files & Mulholland* and *Ralph G. Coad,* for appellant.

*Healy, Thomas & Healy,* for appellee.

DE GRAFF, J.—This action was commenced at law to recover of the defendant, appellee, the value of five Scripps-Booth automobiles alleged to have been stored in appellee's warehouse, for which it issued its warehouse receipts. The appellee answered, admitting that it conducted a warehouse, and that it received five automobiles for storage and issued its receipts therefor, and alleged that it still held such cars, and had never refused to deliver them. It denied that the copies of the warehouse receipts set out in the petition were correct, and alleged that they had been altered since issued, without its knowledge or consent, and that, either by fraud of plaintiff or through mutual mistake, the wrong serial numbers of the cars actually stored with it appeared on the receipts; and it asked a reformation of the receipts. On motion of appellee, the cause was transferred to equity, for the trial of the equitable issue raised by the answer. A trial of that issue resulted in a decree reforming the warehouse receipts to make the serial numbers of the cars therein described correspond with the serial numbers of the cars in appellee's warehouse, which appellee alleged its readiness and ability to surrender, on payment of the storage charges. The petition was dismissed.

The single issue on the trial below was, and the controlling question here is, whether the warehouse receipts should be reformed as prayed in the answer.

The primary facts are not in dispute. The Hanson & Tyler Auto Company was engaged in selling Scripps-Booth automobiles in Fort Dodge, and maintained branches or subagencies at other points. In the spring of 1920, it purchased of the manufacturer 75 Scripps-Booth cars. The purchase of 23 of these was financed in part by the appellant company. The purchaser paid about 15 per cent of the purchase price in cash, and exe-

cuted its note to appellant for the balance, and also so-called trust receipts, wherein it acknowledged the receipt from appellant of the 23 cars, described by serial numbers; acknowledged that the cars were the property of appellant; and agreed not to dispose of them except upon written order from appellant, and upon payment of the amount required by the order, and to return them upon demand. Prior to September 15, 1920, Mr. Gleason, a representative of appellant, demanded payment of the note, or warehouse receipts for the unsold cars covered by the trust receipts. On September 15, 1920, the appellant issued to the Hanson & Tyler Auto Company warehouse receipts for 16 Scripps-Booth cars, each receipt describing a single car by a serial number. On that day, or a day or two previous, 14 Scripps-Booth cars had been put in the warehouse by the Hanson & Tyler Auto Company. Two cars were, by arrangement between the appellee's agent in charge of its warehouse and a representative of the auto company, retained in the possession of the latter, for the purpose of display or demonstration, and were later put in the warehouse. On or before September 20, 1920, the receipts issued to the Hanson & Tyler Auto Company for the 16 cars were surrendered, and new receipts issued by appellee in the name of the appellant. There is some dispute as to whether the receipts were delivered by appellee directly to Gleason, or to someone connected with the Hanson & Tyler Auto Company. The preponderance of the evidence supports the latter view. At the time the first receipts were issued, no one appears to have checked the serial numbers of the cars, as shown on the receipts, with the numbers appearing on the cars actually in the warehouse. The receipts in question were written in duplicate at one writing, by the use of a carbon paper: the first, on white paper, being the ones now held by appellant, and the carbon duplicates being retained by the appellee. They recite that appellant "has received from General Motors Acceptance Corporation * * * the goods or packages enumerated and described in the Schedule A below * * *." At the bottom, under a heading "Schedule A," there appears in each of the receipts held by appellant, and in the duplicates held by appellee, a description, by name, model, and number, of a single car, as: "Scripps-Booth Model B39-23571." The numbers so appear-

ing on the receipts in controversy do not correspond with the number of any car now held by appellee. It is the claim of appellee, however, that, at the time the second receipts were made out and issued to appellant, it had been discovered that the numbers on the first receipts did not, in all cases, correspond with the numbers on the cars in storage, and that, on three of the receipts now held by appellant, the number of a car now in storage was written in the upper left-hand corner, and on the other two, the word "demonstrator" was so written, referring to the two cars retained for a time in the possession of the Hanson & Tyler Auto Company. As we understand the record, the receipts held by appellant show the partial erasure of something written in the corner, and the duplicates retained by appellee show, in the corner, on three of them, a number corresponding with the number of a car now in storage, and, on two of them, the word "demonstrator." When or by whom the erasures on the receipts now in the hands of appellant were made, is not shown, further than that they were made after the receipts were delivered by appellee.

It is not seriously disputed but that the 5 cars now in the hands of appellee were among the 16 received from Hanson & Tyler Auto Company. The other 11 have been taken out of storage, and are not directly involved here. It is plain that the warehouse receipts held by appellant do not, in terms, describe the cars now in appellee's warehouse.

Mr. Morton, the agent of appellee who issued the second receipts, testified:

"The original receipts that had been issued were brought here with instructions to make out duplicates. Whoever delivered the receipts to me had me make out duplicates. It was either Gleason or a representative of the Hanson & Tyler Company that brought me the original warehouse receipts. That was on the 20th of September. I made a duplicate of these warehouse receipts, putting on the bottom of each warehouse receipt the numbers as had been recorded in my book, with an addition in four instances of corrections which were placed in the corner of the warehouse receipts, so that these warehouse receipts carried two numbers, instead of one. I put two numbers on, instead of one, because, when the original numbers were filed,

none of the automobiles were gone up to, and the numbers taken from them. These numbers were given from a bill. It must have been discovered by whoever had it that those numbers, some of them I had made probably, were incorrect, and they told me, I suppose, what they thought were correct, and I put that on the duplicate on the corner on the top of it. Q. Who told you that? A. Well, I will have to stick to Mr. Hanson, because he is the man that was doing the business,—he is the man I was doing business with. The receipts that had been issued on the 15th were destroyed. The white or original of those issued on the 20th were delivered to the party that gave me the originals. Q. Well, who is the party,—that is what I want to know? A. Mr. Gleason.''

On cross-examination, he testified:

''The original receipts had been issued by Mr. Lammel to Hanson & Tyler. Q. And then your testimony was, in the early part of it, that somebody brought these receipts back, and you issued new receipts in the name of the plaintiff, but that you didn't know whether it was Mr. Gleason or whether it was some representative of Hanson & Tyler? A. Not Hanson & Tyler, but someone from—representing the General Motors people. That is the way my testimony was, or at least that is the way that it should be, and the way I intended it.''

There was no contradiction of the testimony of Morton that he put the correct numbers in the corners of the receipts under the circumstances and for the purpose as claimed by him.

Mr. Gleason, for appellant, testified that the warehouse receipts were delivered to him by Hanson on September 18th; that at that time there was no marking upon them that was called to his attention; that he discovered that two of them were not signed, and that there was a discrepancy in the number of one of them when checked with his records; that, on the 20th, he visited the warehouse, and explained to Morton that there was a discrepancy in the number of one, and that two of the receipts were unsigned; that Morton corrected the number of the one, and signed the two; that nothing was said between him and Morton with reference to any changes in the upper left-hand corner of the receipts; that his attention was never called to the fact that there were any changes in the upper left-hand

corner while he was in Ft. Dodge; and that the first time his attention was called to it was after the case was turned over to attorneys. He further testified that the receipt on which the number was corrected was one of those here involved; that he did not show Morton the records,—just told him what the number was.

Morton, when asked if the transaction with Gleason was not substantially as testified to by the latter, answered:

"I don't remember it sufficiently to swear to it either way. Q. You have an impression that it occurred? A. Let me see,— well, I won't answer the question. I can't answer the question."

Mr. Shader, an employee of the Hanson & Tyler Auto Company, testified:

"I don't recall how it was discovered that the Baker Manufacturing Company used the old number and this other number both on this receipt. Q. Isn't it apparent to you that it was discovered when this was made out on the 20th? A. We knew after that, that was the intent. The number of the car above was the car that was placed there, instead of the number shown at the bottom."

It is fairly established that the Hanson & Tyler Auto Company by mistake gave to appellee wrong numbers for the cars placed in storage, and that these numbers were put in the first receipts. The error had in some instances been discovered, and the correct numbers given to appellee at the time the second receipts were issued. In the case of the two cars described as demonstrators, which were put in the warehouse at a later date than the others, the mistake was not so discovered. The evidence shows, however, that the two cars actually put in the warehouse were the identical ones which it had been agreed the Hanson & Tyler Company should retain for a time, and for which receipts were intended to be issued. As to these two cars, it is clear that there was a mutual mistake on the part of the Hanson & Tyler Auto Company and appellee as to the numbers in both the first and second receipts.

As to the other three cars in question, the mistake had been discovered and the correct numbers given to Morton, appellee's agent, before the second receipts were issued. There was no

1. REFORMATION OF INSTRUMENTS: instruments reformable: warehouse receipts.

mistake at that time as to the numbers of the cars actually in the warehouse. Morton knew of the mistake in the first receipts, and adopted a method of correcting it in the second ones. Why he did not adopt the obvious and effective method of putting the correct number in the body of the receipts is difficult to understand. But it cannot be doubted, under the testimony, that he did attempt in the second receipts to correct the error by making out the receipts as before, but adding in the corners the correct numbers of the cars actually in the warehouse. The Hanson & Tyler Company, knowing that the numbers so placed in the corners of the receipts were the numbers of the cars which it had placed in the warehouse, and for which the receipts were intended to be given, cannot be heard to say that the receipts should not be reformed to express the true agreement of the parties. The language of the receipts clearly fails to express the true agreement, and in such case equity will reform, although the mistake was not then one of fact as to the numbers of the cars in the warehouse, but was in the language used, or the form or method adopted to express the agreement. *Stafford v. Fetters,* 55 Iowa 484; *Hausbrandt v. Hofler,* 117 Iowa 103; *Coleman v. Coleman,* 153 Iowa 543; *Bonbright v. Bonbright,* 123 Iowa 305; *Hyde Park Inv. Co. v. Glenwood Coal Co.,* 170 Iowa 593; *Stelpflug v. Wolfe,* 127 Iowa 192; *Brown v. Ward,* 119 Iowa 604.

But the reformation sought is not against the Hanson & Tyler Auto Company, but the appellant, the holder of the receipts. It is said that the appellant is a bona-fide purchaser of the receipts, and that they may not be reformed as against it, and to its prejudice. A bona-fide purchaser of a warehouse receipt is one who takes it for value and without notice of any defect in the title of the vendor. 40 Cyc. 422. Value, in reference to warehouse receipts is defined by statute as, "any consideration sufficient to support a simple contract. An antecedent or pre-existing obligation, whether for money or not, constitutes value where a receipt is taken either in satisfaction thereof or as security therefor." Section 3138-a58, Code Supplement, 1913 (Section 9718, Code of 1924). The appellant was the owner of certain cars, which were in the possession of the Hanson & Tyler Auto Company under the trust receipts.

The trust receipts so recited, and provided that the cars would be returned to appellant on demand. Being entitled to the possession of the cars on demand, it directed the Hanson & Tyler Auto Company to put the cars in a warehouse and deliver to it the warehouse receipts. Whatever the Hanson & Tyler Auto Company did in that respect was in pursuance of that direction. Appellant gave no credit on the note of the Hanson & Tyler Auto Company for the warehouse receipts. They were not taken as security for the note; the cars themselves were such security, if the relation under the trust receipt was that of mortgagor and mortgagee. The warehouse receipts merely represented the property, the cars themselves, title to which, with the right of possession, was already secured to appellant by the trust receipts. We think that the Hanson & Tyler Auto Company, in placing the cars in the warehouse and taking warehouse receipts therefor at the direction of the appellant, was acting as the agent of appellant, and that appellant was affected with notice of such facts, with respect to the cars actually in the warehouse and intended to be covered by the warehouse receipts, as were within the knowledge of its agent. It neither gave value for the warehouse receipts nor took them without notice of the facts, and was not, therefore, a bona-fide purchaser.

Moreover, the fact that the Hanson & Tyler Auto Company was the agent of appellant to put the cars covered by the trust receipts in storage and take warehouse receipts for them would authorize the reformation, as against appellee, of the receipts so given, to make them express the actual intention and contract of the parties. *Sowler v. Day,* 58 Iowa 252; *Pyne v. Knight,* 130 Iowa 113. We do not overlook the fact that some of the cars placed in the warehouse were not covered by the trust receipts in evidence, while the cars for which appellant here seeks to recover were so covered. We do not see, however, how that situation affects the question of notice to appellant of the facts within the knowledge of its agent who put the cars in storage, or the question whether it gave value for the receipts. The result is that it holds warehouse receipts for five cars upon which, so far as the record discloses, it never had any claim. It does not appear from the record what became of the five cars covered by the trust receipts, for which the present claim was made by

appellant. Whether appellant did or did not receive the proceeds of the sale of these by the Hanson & Tyler Auto Company, as it was entitled to do under the trust receipts, it is not prejudiced by holding warehouse receipts for five cars upon which it had no prior claim. There can be no doubt, under the evidence, that appellee never had in its warehouse, and never intended to issue warehouse receipts for, the five cars described in the body of the receipts in question, and that it was in no manner responsible for the actual loss of those cars to appellant, if they were lost.

Nor was there any such negligence on the part of appellee as to deprive it of the right to have the receipts reformed to express the true agreement. It attempted, in the second receipts, to correct the errors found in the first ones, and did so in a manner understood by the Hanson & Tyler Auto Company to accomplish that purpose. See *Nielander & Co. v. Chicago, M. & St. P. R. Co.,* 114 Iowa 420; *Pyne v. Knight,* supra.

It is urged that it was error to transfer the case to equity. It was only the equitable issue that was so transferred. This was proper. Section 3435, Code of 1897 (Section 10947, Code of 1924); *Dille v. Longwell,* 169 Iowa 686. However, the equitable issue of reformation was the only defense presented, and, if determined in favor of appellee, was a complete defense. The answer pleaded the readiness and ability of appellee to deliver, on payment of its charges and surrender of the receipts, the cars that would be described in the receipts if reformed. The determination of the equitable defense in favor of appellee was determinative of appellant's right to recover the value of cars not described in the receipts so reformed, which was the cause of action alleged in the petition. There was no error in dismissing the petition. *Twogood v. Allee,* 125 Iowa 59.

2. ACTIONS: proper calendar: controlling equitable issue.

The decree is—*Affirmed.*

FAVILLE, C. J., and STEVENS and VERMILION, JJ., concur.