Argued January 22, affirmed February 26, 1929.

# C. A. WOLFGANG *v.* HENRY THIELE CATER-ING CO. ET AL.

(275 Pac. 33.)

For appellants there was a brief and oral arguments by *Mr. E. A. Boyrie* and *Mr. Wm. B. Layton.*

For respondent there was a brief over the name of *Mr. Roy K. Terry,* with an oral argument by *Mr. Gus C. Moser.*

ROSSMAN, J.—From the evidence we find the following facts: the Clark-Wilson Company owned a lot in the city of Portland, upon which it was erecting a building, expressly designed for the tenancy of the Thiele Company, which proposed to operate in it a restaurant; it was a part of the plan that some of the floors should be covered with linoleum. Mr. Carl Linde, an architect who represented 'the Thiele Company in the construction work, entered into negotiations with the plaintiff for the purchase of a quantity of linoleum. November 29, 1924, he received from the plaintiff a written proposal, quoting prices and quantities; the letter added that 25 per cent of the purchase price would be payable on completion of the installation, and that the balance might be paid in monthly installments; it concluded as follows: "It is agreed and understood, that this material is the property of the Cork Floor Products Company until entirely paid for." Later Mr. Thiele visited the plaintiff's place of business to select the linoleum; a Mr. Robert W. Schmeer, who was attending to the financial details of Mr. Thiele's venture, was present upon this occasion. At that time Mr. Thiele explained that payment of a large portion of the purchase price

would have to be deferred; thereupon the plaintiff stated, "Well, we will have to have a title retaining clause in that contract, then, that the materials would be in our possession, or our property, until entirely paid for." The plaintiff's testimony that this proposal met with approval of both Mr. Schmeer and Mr. Thiele, is acquiesced in by both of these men. Still later, that is, February 2, 1925, the plaintiff and the Thiele Company endeavored to reduce this agreement to writing. This instrument, with its formal parts omitted, is as follows:

"Mr. Henry Thiele,
     Portland, Ore.
Dear Sir:

We propose furnishing approximately 220 sq. yds. of pattern No. 1430 inlaid Linoleum on the first floor of your new building for the sum of $719.00 and approximately 222 sq. yds. of pattern No. 1504 inlaid Linoleum on Mezzanine floor for the sum of $695.00 and approximately 470 sq. yds. of pattern No. 1504 inlaid Linoleum in Banquet Room and Hall for $1479.00.

To lay the above material with seams cemented, the labor will cost $227.00.

Respectfully submitted,<br>
CORK FLOOR PRODUCTS Co.<br>
By C. A. WOLFGANG.

CAW:AVM
Accepted:

HENRY THIELE CATERING COMPANY.<br>
By HENRY THIELE.

$800.00 to be paid when the materials are on the premises; Balance in 12 equal monthly payments from date of completion and acceptance of work with interest on deferred payments at the rate of 7% per annum.

C. A. W."

It will be observed that the writing is silent concerning any reservation of title. According to the plaintiff, he noticed this omission shortly afterward, and at once called it to Mr. Thiele's attention; the latter advised the plaintiff to mention this matter to Mr. Schmeer.

The testimony of both the plaintiff and Mr. Schmeer shows that the latter promptly agreed that the title reservation clause had been inadvertently omitted, and should be added. The latter also suggested, that their preliminary agreement contemplated that the interest rate should be 6 per cent, and requested, that when the title reservation clause was added, the interest should be reduced from 7 per cent to 6 per cent. The plaintiff approved this suggestion, and thereupon Mr. Schmeer substituted the figure 6 for 7, and dictated to one, A. V. Marsa, plaintiff's bookkeeper, a title retaining clause, which the latter typed at the bottom of the contract of sale; its words are as follows: "Material to be in the possession of Cork Floor Products Company until entirely paid for." Thereupon Mr. Schmeer marked this sentence "O. K.," added his initials, and instructed the plaintiff to take the contract in its amended form to Mr. Thiele for the latter's signature. The testimony is to the effect that pursuant to an agreement between Mr. Schmeer and Mr Thiele, the latter would sign no documents without Mr. Schmeer's O. K. The plaintiff called at the place of business of the Thiele Company upon several occasions, but was unable to secure an appointment with Mr. Thiele so as to secure his signature; later he returned to Mr. Schmeer, complaining that he had been unable to obtain Mr. Thiele's signature, and that $800.00 was overdue upon the contract and unpaid; Mr. Schmeer, thereupon, volunteered to secure the sig-

nature. Shortly thereafter he returned with Mr. Thiele's signature appended to the contract and a check for $800.00. This occurred March 21, 1925. We believe that we are fully justified in accepting the foregoing as a true account of the transactions. All three of the principals vouch for it. The testimony of Mr. Schmeer to the effect that it was fully agreed that the title should be reserved in the plaintiff, is both emphatic and convincing. As far as we are able to observe, the interests of neither himself, nor of Mr. Thiele were served when both testified to the omitted title reservation clause. Mr. Schmeer explained that he was the one who dictated this clause to Mr. Marsa after the plaintiff mentioned its omission, and that he evidently used the word "possession" inadvertently, in lieu of "property." Both he, and the plaintiff, declared that they somehow failed to discover the erroneous substitution. Mr. Marsa testified, that Mr. Schmeer dictated this sentence and that he, Marsa, typed it. The clause was not added, nor was the interest rate altered, in the duplicate original in the possession of the Thiele Company.

Shortly after the plaintiff had completed the installation of the linoleum, that is in April of 1925, it requested that the Thiele Company should execute its notes for the unpaid balance of the purchase price. The contract price was $2,824.02; to this was added $227, the charge for labor expended in installing the linoleum, and $551.35, the price of some extra items. From the total of $3,602.37 the plaintiff deducted $840, paid by the Thiele Company, thus leaving a balance unpaid of $2,762.37. In compliance with the plaintiff's request, the Thiele Company executed and delivered to the plaintiff, its twelve negotiable promis-

sory notes aggregating in amount the sum just mentioned. According to the plaintiff, he advised the Thiele Company when he accepted these notes, that he desired them for hypothecation, but would not take them as payment; this evidence is uncontradicted. The plaintiff retained the notes for some days, and then used them for the above-stated purpose. When the Thiele Company failed to pay, the plaintiff redeemed the notes at the bank, and thus came again into their possession. They were produced at the trial, and are before us as exhibits.

None of the parties committed any act out of harmony with the contention that title was to be reserved in the plaintiff until the linoleum should be paid for, unless we should consider the acceptance of the notes as such an act; we will dispose of that matter later. No effort whatever was made to conceal the fact that the title reservation clause was subsequently added. Even a hasty glance at the document readily shows that it was added after the other parts of the contract had been written; the difference in the ink, and in the margin make that clear, as does also the adjacent initials, and the letters "O. K." written by Mr. Schmeer.

In June of 1925, the Thiele Company experienced financial difficulties, and shortly thereafter passed into the control of a committee of its creditors; still later it made an assignment for their benefit. In this period of time, several meetings of its creditors were held, in all of which they were divided into two groups; the one was composed of open account creditors; to the other, was assigned those whose claims were secured by title reservation stipulations. The plaintiff classed himself into the latter group and there took his place. Finally the defendant, Clark-

Wilson Company,, purchased practically all of the assets of the assigned estate for the sum of $13,000; we are satisfied that before it did so, it was aware of the fact that the plaintiff claimed title to the linoleum; later it leased the premises to the defendant, Portland Catering Company. When the Clark-Wilson Company came into possession, it refused to yield to the plaintiff's claim; still later this suit was brought.

The above, we believe, constitutes a sufficient review of the evidence. It will be observed from the foregoing, that this is not an effort upon the part of the plaintiff to write into the contract of sale a complete title reservation clause. Originally such a stipulation was inadvertently omitted, but the parties themselves soon supplied a memorandum of it. But their efforts fell short of a perfect title reservation contract through the use of the word "possession" in lieu of the word "property": *Maxson* v. *Ashland Iron Works*, 85 Or. 345 (166 Pac. 37, 167 Pac. 271). What they wrote is in itself persuasive that an error prevented a perfect expression of their agreement. We have the uncontradicted testimony of three witnesses that an error actually occurred. Two of these are either disinterested, or testified against their financial interests: both are men whose character entitles them to testimonial credit. Without reviewing the evidence further we state our conclusion, that the evidence clearly and convincingly establishes that the parties intended to include in their contract of February 2, 1925, a title reservation provision, but inadvertently omitted it through mutual mistake; that later when they endeavored to supply it they used the word "possession" when they intended to use the word "property."

The defendants contend that if a title reservation clause was omitted from the contract, the plaintiff's negligence was so gross that a court of equity ought to withhold relief. It is the duty of a party who seeks the reformation of an instrument, to prove not only that a mutual mistake was made, but also that the mistake was not the result of his inexcusable negligence: *Jones* v. *Bramwell,* 111 Or. 316 (226 Pac. 694). The degree of negligence which will preclude the party from access to equitable relief, is thus stated by Pomeroy:

" * * As a second requisite, it has sometimes been said in very general terms that a mistake resulting from the complaining party's own negligence will never be relieved. This proposition is not sustained by the authorities. It would be more accurate to say that where the mistake is wholly caused by the want of that care and diligence in the transaction which should be used by every person of reasonable prudence, and the absence of which would be a violation of legal duty, a court of equity will not interpose its relief; but even with this more guarded mode of statement, each instance of negligence must depend to a great extent upon its own circumstances. It is not every negligence that will stay the hand of the court. The conclusion from the best authorities seems to be, that the neglect must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not of itself be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby. In addition to the two foregoing requisites, it has been said that equity would never give any relief from a mistake, if the party could by reasonable diligence have ascertained the real facts; nor where the means of information are open to both parties and no confidence is reposed; nor unless the other party was under some obligation to disclose the facts known to himself, and concealed them. A

moment's reflection will clearly show that these rules cannot possibly apply to all instances of mistake, and furnish the prerequisites for all species of relief. Their operation is, indeed, quite narrow; it is confined to the single relief of cancellation, and even then it is restricted to certain special kinds of agreements." Pomeroy's Eq. Juris., 4 ed., § 856.

In *Howard* v. *Tettelbaum*, 61 Or. 144 (120 Pac. 373), this court expressed itself as satisfied with the rule that "negligence, in order to bar equitable relief in case of mutual mistake, clearly established, must be so gross and inexcusable as to amount to a positive violation of a legal duty on the part of the complaining party." This statement of the rule was approved in *Welch* v. *Johnson*, 93 Or. 591 (183 Pac. 776, 184 Pac. 280), and again in *Southeast Portland Lbr. Co.* v. *Heacock, ante,* p. 248 (275 Pac. 28), decided by this court February 13, 1929. In *Powell* v. *Heisler*, 16 Or. 412 (19 Pac. 109). Mr. Chief Justice Lord expressed the rule thus:

"The counsel for the defendant insists that its proper exercise is limited to cases where the party is free from negligence. That if he possessed the means of information, or by the exercise of reasonable diligence could have obtained the knowledge, the court will not relieve him. But we think in this class of cases, involving mistakes, arising from an alleged want of proper diligence, the jurisdiction will in a great measure depend upon the particular facts and circumstances surrounding the transaction."

In 21 C. J., Equity, p. 88, § 64c, the editor states the rule thus:

"As a general rule a party will not be given relief against a mistake induced by his own culpable negligence, as against one who was free from fault, * * But this rule is not inflexible and in many cases relief

may be granted although the mistake was not unmixed with some element of negligence, particularly where the other party has been in no way prejudiced; * * Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. But where no one is injured by the mistake other than the party himself, and no one has changed his position in consequence of what has been done and of the mistake, relief may be granted even though a high degree of care has not been exercised. Even gross negligence has been held insufficient to prevent relief for a unilateral mistake made with the knowledge of the other party."

In 10 R. C. L., Equity, p. 296, § 40, the writer states:

" * * In truth the later cases seem to establish the doctrine that whenever there is a clear *bona fide* mistake, ignorance, or forgetfulness of facts, the contract may be avoided. Thus it is a common thing for courts of equity to relieve parties who have by mistake discharged mortgages on record, although the facts concerning which the mistake was made were a matter of record at the time. Not every negligence, therefore, will stay the hand of a court of equity, but each instance of negligence must depend, to a great extent, on its own circumstances. The conclusion from the best authorities seems to be, that to constitute culpable negligence the neglect complained of must amount to the violation of a positive legal duty. The highest possible care is not demanded. Even a clearly established negligence may not, of itself, be a sufficient ground for refusing relief, if it appears that the other party has not been prejudiced thereby."

The fact that a person accepts or signs an instrument without reading the same, is not of itself necessarily a barrier to his suit: *Archer* v. *California Lbr. Co.*, 24 Or. 341 (33 Pac. 526); *Howard* v. *Tettelbaum,*

*supra; Holden* v. *Law Union & Rock Ins. Co.,* 63 Or. 253 (127 Pac. 547); *Bradshaw* v. *Provident Trust Co.,* 81 Or. 55 (158 Pac. 274); *Welch* v. *Johnson,* 93 Or. 591 (183 Pac. 776, 184 Pac. 280); 34 Cyc., Reformation of Instruments, 949. But see *Manley* v. *Smith,* 88 Or. 176 (171 Pac. 897), and *L. B. Menefee Lbr. Co.* v. *Gamble,* 119 Or. 224 (242 Pac. 628). The failure, therefore, of the plaintiff to observe that the word "possession" had been inadvertently used in lieu of the word "property" does not necessarily constitute an obstacle to the relief sought. The defendants point out, that the plaintiff is an established business man, who has had experience with the preparation of conditional sales contracts, and argue, that hence his explanation of oversight, inadvertence and mistake, should not be as readily accepted as that of one who was lacking in experience. In *Welch* v. *Johnson, supra,* this court said: "Even if the deed in question was prepared in the office of the plaintiff's attorney, and this is questionable under the testimony, that would not necessarily make it less a mistake to include the clause in dispute. Even attorneys are not infallible * * ." The solution of our problem, therefore, should not stop when we have discovered the ability and experience of the plaintiff; but we should go on and determine whether a mistake was made by the parties. Nothing contained in *L. B. Menefee Lbr. Co.* v. *Gamble, supra,* relied upon by the defendants, foreshadows a result in their favor. The decision in that case states the general rules of care, exacted of a party who seeks the reformation of an instrument; but, the turning point of the decision was the finding that the plaintiff's proof did not establish a mutual mistake.

It is to be observed, that no element of estoppel is present; no *bona fide* purchaser, without notice, has become interested in the restaurant property. The creditors accepted a composition, and the defendant Clark-Wilson Lbr. Co. and Portland Catering Co. were aware of plaintiff's contentions before they altered their positions.

Undoubtedly the plaintiff was guilty of a degree of inattention in not discovering the substitution of an erroneous word for that intended. But, we do not believe that his lack of a higher degree of care is inexcusable under the circumstances. When he discovered the omission of the title reservation clause he at once undertook the task of having one inserted; as we have explained before, his efforts would have been entirely successful had not the word "possession" crept into the document instead of the word "property." The evidence is uncertain whether Mr. Schmeer inadvertently dictated the word "possession," or whether Mr. Marsa misunderstood him. The plaintiff is at fault in not having discovered this error; but, similar oversights not infrequently occur even where a high degree of vigilance is exercised. An error somewhat akin to that before us was held excusable in *General Motors Acceptance Corp.* v. *Baker Mfg. Co.,* 199 Iowa, 155 (201 N. W. 774). In the recent case of *Skelton* v. *Federal Surety Co.,* 15 Fed. (2d) 756, the want of care that resulted in the mistake was greater, we believe, than that in the situation before us, yet it was held excusable. See, also, *Haley* v. *Sharon Twp. Mut. F. Ins. Co.,* 147 Minn. 190 (179 N. W. 895). Since a reformation of the instrument now before us will not adversely affect the interests of anyone whose interest should be held

immune, we conclude that the lower court was justified in ordering its reformation.

The defendants argue, that when the plaintiff mingled in one account to open account items with the contract items, accepted the notes for the combined sum, and discounted them at the bank, it thereby waived its title retention privilege, and vested title in the purchaser. Upon the completion of the installation of the linoleum, and before the plaintiff received the notes, the Thiele Company paid to the plaintiff $840, which was a sum in excess of the value of the extra items and labor. Since the Thiele Company gave no directions as to how this payment should be applied, the creditor had the right to apply it upon the secured or unsecured account as it saw fit: *City of Marshfield* v. *United States Fidelity & Guaranty Co., post,* p. 547 (274 Pac. 503), decided by this court February 13, 1929; *Christman* v. *Salway,* 103 Or. 666 (205 Pac. 541). The plaintiff testified that he applied the payment upon the labor and extra items. Thus, when the notes were taken the only amount due to the plaintiff was an indebtedness for linoleum sold under the contract. Whether the taking of those notes constituted an election to waive the benefit of the title reservation clause, is not a pure question of law under the facts of this case. As we have indicated before, the uncontradicted testimony is to the effect that before the notes were prepared, the plaintiff requested them for hypothecation, and explained that he would not accept them as payment. Under those circumstances we do not believe that we can treat their acceptance as a waiver of the reserved title: *Endicott* v. *Digerness,* 103 Or. 555 (205 Pac. 975).

We come now to the contentions of the defendant that the complaint does not negative negligence upon

the plaintiff's part, and that it is, therefore, insufficient as a cause of suit. In the statement of facts preceding this decision there appears a review of the complaint. The defendant demurred to the latter, but, did not argue their demurrer, nor point out the defect they now contend exists; thereupon it was overruled.

During the introduction of evidence no objection was made upon the ground that the complaint did not allege a cause of suit, nor did the defendants ever contend that the probable offer of any piece of evidence had not been foreshadowed by an averment of the complaint; the defendants never requested time to enable them to assemble proof in rebuttal of a circumstance narrated by the plaintiff's witnesses. Thus, the question before us is solely one of the technique of pleading unrelated to the inherent merits of the plaintiff's cause. It is to be observed that the complaint does not confess negligence upon the part of the plaintiff; it avers that the error which diverted the parties' efforts from a true expression of their agreement, was "due to mutual mistake, inadvertence, omission, and oversight on the part of the plaintiff and the said defendant Henry Thiele Catering Company, and through the mistake of the scrivener." This is a confession, it is true, that the plaintiff did not exercise the degree of care commensurate with the demands of the situation; but, these words, as used in that combination, we believe, denote a lack of care somewhat less than is implied by the word "negligence." If the pleading confessed negligence, one could readily understand why the plaintiff should be required to allege the circumstances which he would expect to rely upon to excuse it. See, for instance, *Jacobs* v. *Parodi,* 50 Fla. 541 (39 South. 833);

34 Cyc., Reformation of Instruments, 976. This court, after having first held otherwise, has taken the position that a complaint in a negligence case need not plead the absence of contributory negligence: *Grant* v. *Baker,* 12 Or. 329 (7 Pac. 318); *Johnston* v. *Oregon S. L. & U. N. Ry. Co.,* 23 Or. 94 (31 Pac. 283). For a discussion of the subject see 29 Cyc., Negligence, 575.

If one were to undertake the formulation of a general rule applicable to the sufficiency of a complaint in a suit of this character, he would be compelled to take into account the presumption that men take due care to safeguard their rights and the interests of others: Jones Commentaries on Ev. (2 ed.), § 78; Or. L., § 799, subds. 4, 19 and 20. Facts, which the law presumes exist, need not be averred: *Hedges* v. *Strong,* 3 Or. 18; *Albee* v. *Albee,* 3 Or. 321; *Smith* v. *Jackson,* 97 Or. 479 (192 Pac. 412); *Ingersley* v. *Goodman,* 116 Or. 210 (240 Pac. 877). Hence, one who was about to formulate a general rule would omit any requirement that the plaintiff should plead the absence of negligence upon his part. This would be especially true since the pleader is rarely required to plead matters of a negative character: *Nickell* v. *Bradshaw,* 94 Or. 580 (183 Pac. 12, 11 A. L. R. 623).

In suits of this character, this court has upon several occasions stated, that the complaint must negative gross negligence upon the part of the party who seeks the document's reformation. The earliest expression to this effect, is found in *Lewis* v. *Lewis,* 5 Or. 169. Other cases containing statements to like effect are *Hyland* v. *Hyland,* 19 Or. 51 (23 Pac. 811); *Meier* v. *Kelly,* 20 Or. 86 (25 Pac. 73); *Hughey* v. *Smith,* 65 Or. 323 (133 Pac. 68); *Boardman* v. *Insur-*

*ance Co. of Pennsylvania,* 84 Or. 60 (164 Pac. 558);
*Peninsula Lumber Co.* v. *Royal Indemnity Co.,* 93 Or.
684 (184 Pac. 562); *L. B. Menefee Lbr. Co.* v. *Gamble,*
119 Or. 224 (242 Pac. 628); *Rosenberg Suit & Coat
Co.* v. *General Accident Fire etc. Corp.,* 98 Or. 118
(193 Pac. 441); *Osborn* v. *Ketchum,* 25 Or. 352 (35
Pac. 972). But the absence of such a negative aver-
ment is not fatal to the pleading when its sufficiency
has not been tested by a demurrer: *Welch* v. *Johnson,
supra; Rosenberg Suit & Coat Co.* v. *General Accident
etc. Corp., supra; Osborn* v. *Ketchum, supra; South-
east Portland Lbr. Co.* v. *Heacock, ante,* p. 248 (275
Pac. 28), decided by this court February 13, 1929.
See, generally, Bancroft's Code Pleading, § 2239.

A careful reading of all the foregoing decisions will
reveal that the statement above referred to was not
entirely essential to the decision of any of the cases;
in each instance the case was disposed of upon its
merits. It will be further observed that almost all
of the above cases cite *Lewis* v. *Lewis,* which pio-
neered in the above statement. In the latter case the
court said: "To entitle the party to relief the facts
must be material, and also such that he could not with
reasonable diligence have obtained knowledge of it."
In support of this statement, the court cited Willard's
Equity Jurisprudence; a citation to the same work is
to be found in several of our early reports which
determined cases affecting the reformation of in-
struments. A reference to the latter work, at the
pages cited in our earlier decisions, will show that
this writer found inexcusable a want of care upon the
part of the complaining party, which does not at the
present time operate as a bar to relief. Further, that
writer seemed to believe that there was a common

degree of care exacted of all contracting parties who were about to subscribe their signatures to a document, rather than the adjustable degree of care which is applied at the present time. Hence, when Mr. Willard wrote, it was altogether proper to require the complaint to negative negligence upon the part of the plaintiff if the court was unwilling to give him the benefit of the presumption that he exercised due care in his own behalf. It is to be observed from the authorities previously reviewed, that at the present time a considerable degree of carelessness will be found excusable if it has not adversely affected some other person whose interests should not be prejudiced by a reformation of the document. Upon the other hand, if the reformation would affect a *bona fide* purchaser, even a slight degree of negligence will not be excused. It will also be observed, that this court, in harmony with the test written by Pomeroy, has held, that as a general rule the facts of each case will in a large measure, determine the degree of care which the party should have exercised; indeed, the modern authorities give us only one general statement of the standard degree of care; it is, that the laxness must not have violated a positive legal duty owed by the complaining party. Such being the situation, a rule of pleading which would require each plaintiff to negative gross negligence upon his part would be out of harmony with the substantive law at the present time. Further the statement, that the plaintiff was free of gross negligence would constitute a mere conclusion of law devoid of any implication of fact; it would serve no useful purpose in the suit.

The foregoing review of our preceding cases, and of the principles of pleading applicable to cases of

this character, will readily convince one, that when the decisions announced tersely a requirement for the negation of gross negligence upon the complainant's part, the court was not undertaking to formulate the specific principles, but was pointing out only the general rule. The specific requirement must be that if the circumstances alleged indicate that a want of due care upon the complainant's part contributed to the erroneous memorandum of agreement, he must allege the other circumstances which he will offer evidence of to excuse his fault; thus he negatives his negligence in a useful manner. It is believed that the decision in *Hyland* v. *Hyland, supra,* supports the statement just made; in that case the headnote recites that gross negligence must be negatived by the pleader; but, the decision does not warrant this statement, it points out succinctly what a pleader should allege; see, also, *Osborn* v. *Ketchum, supra.* Code pleading is fact pleading; fact pleading does not contemplate the pleader's submission to the useless ritual of idle ceremony, but demands only that he plead sufficient facts so that his opponent may be notified of the contentions of fact he will offer upon the trial. In the following two recent cases the sufficiency of the complaint was tested by rules of pleadings similar to those just enunciated: *Richardson* v. *Perrin,* 137 Ga. 432 (73 S. E. 649); *Hitchens* v. *Milner Land etc. Co.,* 65 Colo. 597 (178 Pac. 575). In the notes found in 65 Am. St. Rep. 496 and 28 L. R. A. (N. S.) 913, a few other cases may be found which applied similar principles: see, also, *Cherokee Oil & Gas Co.* v. *Lucky Leaf Oil & Gas Co.,* 116 Okl. 121 (242 Pac. 214, 45 A. L. R. 698). We hold, that if a pleading in a suit of this character imputes to the pleader a want of due

care, he must excuse it by the allegation of the other facts which he will rely upon at the trial; but that it is unnecessary to negative gross negligence in ritualistic form. In the absence of any imputation of negligence there can exist no necessity for requiring the pleader to negative it.

Applying these principles to the complaint before us we do not believe that the pleading was fatally defective. The complaint did not disclose a situation warranting a denial of relief if all of its allegations were true. It alleged the contract which the parties intended to make and pointed out the defect which crept into their writing. It alleged that this error was due to the mistake, inadvertence and oversight of the scrivener and of the parties. In other words, it alleged that the scrivener mistakenly used the wrong word, and that he and the two contracting parties inadvertently overlooked this error. The complaint did not disclose that the plaintiff failed to exercise that degree of diligence which the law exacts when the interests of a *bona fide* purchaser were unaffected by the relief prayed for. If the defendants wanted more details of the contemplated proof, they should have filed a motion. But, we fail to understand how the plaintiff could have alleged more, because his proof did not go beyond his allegations. We conclude that the demurrer was properly overruled.

Finding no error, it follows that the decree of the lower court is affirmed. Costs to neither party.

AFFIRMED.

RAND, J., and BELT, J., concur in result, McBRIDE, J., concurs.