MORTON et al. v. BEIDLEMAN et al.

No. 34200.    Oct. 2, 1951.

Rehearing Denied Oct. 30, 1951.

Application for Leave to File Second
Petition for Rehearing Denied
Nov. 20, 1951.

*237 P. 2d 421.*

Gomer Smith, Gomer Smith, Jr., and Jean P. Day, Oklahoma City, and George H. Jennings, Sapulpa, for plaintiffs in error.

Henry M. Beidleman and Robert R. Beidleman, Okmulgee, and Tom Wallace and Everett S. Collins, Sapulpa, for defendant in error George C. Beidleman.

O'NEAL, J.    This is an appeal from a judgment and decree of the district court of Creek county in a proceeding to foreclose a real estate mortgage.

The action was commenced by defendant in error, George C. Beidleman, against William P. Morton, Walter W. Morton, and Dorothy Morton. Personal judgment was specifically waived at the time the action was instituted. The three defendants filed their joint answer to the petition of plaintiff. Judgment was entered for plaintiff George C. Beidleman against all three defendants. William P. Morton and Walter W. Morton appeal, and name Dorothy Morton as a defendant in error along with George C. Beidleman.

Defendant in error, George C. Beidleman, hereinafter referred to as plaintiff, is a practicing attorney and for many years has been engaged in the practice of law at Okmulgee, Oklahoma. Plaintiffs in error, herein referred to as defendants, are business men of Okmulgee, Oklahoma, and have for many years been engaged in the buying and selling of real property, and are the owners of much real estate.

Plaintiff commenced to represent defendant William P. Morton in legal matters about 1930 and had continued to represent him until this action was commenced. Plaintiff commenced to represent Walter W. Morton in legal matters about 1935, and often between 1935 and the date of the commencement

of this action represented William P. Morton and Walter W. Morton in matters in which they were jointly interested.

Defendants, though they had extensive holdings of real estate, were heavily indebted. In 1938 defendants were being pressed by their creditors, and one creditor, the Central National Bank of Okmulgee, was foreclosing a mortgage on certain real property owned by defendants. For the purpose of assisting in the release of the mortgage lien of said Central National Bank of Okmulgee, plaintiff, Beidleman, loaned defendants the sum of $7,500, which loan was evidenced by a promissory note secured by a mortgage on certain real property in Creek county. Said note bore interest at the rate of 6% per annum. This action was commenced to foreclose said mortgage lien.

The record shows that on December 7, 1931, nearly seven years before the note and mortgage here involved were executed, Walter W. Morton made, executed and delivered to plaintiff, George C. Beidleman, a mineral deed conveying to the grantee all the interest in and to all the oil, gas and other minerals in and under 480 acres of the land covered by the mortgage here involved, and on April 21, 1938, Walter W. Morton conveyed to plaintiff, George C. Beidleman, all of the oil, gas and other minerals in and under the balance of the mortgaged land.

There is nothing in either of the two mineral deeds to indicate the relationship of trust in the matter. But on October 22, 1932, plaintiff, Beidleman, prepared and signed an instrument denominated as "Trust Instrument," which, after certain recitals as to the ownership of the land covered by the first mineral deed, and reciting that:

"Whereas, said Walter W. Morton is indebted to various parties and desires to convey the royalty interest in said premises to Geo. C. Beidleman as trustee for the purpose of paying said obligations and to provide an orderly manner in which said payments are to be made and with the lease (sic) expense possible, and,

"Whereas, said Geo. C. Beidleman has consented and agreed to undertake to perform said trust and to administer the proceeds of the money derived from the sale of said oil produced from said premises under and by the direction of the said Walter W. Morton,"

provided:

"Now, therefore, it is agreed by and between the parties hereto that the said Walter W. Morton, will by proper transfer order convey to the said Geo. C. Beidleman his said royalty interest in and to said premises beginning with the 28th day of September, 1932, and continuing until said indebtedness should be fully discharged."

The instrument then provides for proper account to be kept and that the money received thereunder should not in any manner be mingled with his own personal account. This instrument was never signed by Walter W. Morton and plaintiff, Beidleman, claims it was never delivered to Walter W. Morton. The evidence is in conflict on the question of delivery and at the trial said instrument was in the possession of defendants.

The land covered by the mineral deed of April 21, 1938, never produced any oil. The land covered by the mineral deed of December 7, 1931, produced considerable quantities of oil. It was covered by an oil and gas lease at the time the mineral deed was executed, and thereafter plaintiff received all the royalties from August 10, 1936, to August 10, 1942.

On November 10, 1938, the date on which the involved mortgage was executed, plaintiff, Beidleman, had an unexpended balance of $2,833.89 in his hands which he had received as royalties from said land.

Defendants contend that plaintiff received and retained a total of $8,530.26 in royalties between August 10, 1938, and August 10, 1942. Defendants asserted in their pleadings, and contend throughout the trial, and here contend,

that it was the duty of plaintiff, Beidleman, as a trustee of defendants, to apply the funds he held on November 23, 1938 ($2,823.89) to the satisfaction of the judgment of the Central National Bank of Okmulgee, and that it was also his duty to apply the money which he thereafter received as such trustee in satisfaction of the lawful balance of the mortgage indebtedness to plaintiff. Plaintiff asserted and contends that he had represented defendants as their attorney throughout the period from 1934 to 1940, inclusive; that he had never been paid for his legal services, and that they were reasonably worth $1,000 per year, or a total of $7,000. Plaintiff further claimed that he had made an oral agreement with defendants about July 3, 1947, under which it was agreed that plaintiff should retain all the money which be received as such trustee until his claim for attorney's fees had been satisfied.

Defendants also asserted that the note sued upon is and was usurious, in that, in order to induce plaintiff to make the loan in question, defendants had caused to be conveyed to plaintiff's son, for the use and benefit of plaintiff, 80 acres of land (or an undivided one-half interest in 160 acres of land) of the value of $2,500, and that when the value of said land so conveyed is added to the 6% interest called for by the note it amounts to more than 10% interest. Plaintiff specifically denied said allegation and claim. Plaintiff also contended that defendants were not entitled to recover on their claim for the reason they did not show compliance with the Intangible Tax Law.

The amount of royalties actually received by plaintiff; the amount thereof paid to defendants, or paid for their benefit, such as taxes, etc.; the right of plaintiff to apply any of the money received as royalty for oil produced from said land on attorney's fees due plaintiff, and the validity of the note sued upon, as to whether or not it was usurious and the question of compliance of defendants with the Intangible Tax Law were all in issue.

At the trial some 330 pages of oral testimony was taken and some 225 pages of documentary evidence was introduced. The trial court found and held that the note and mortgage transaction sued upon was not usurious, and in effect held that the Intangible Tax Law had no application as to the royalty payments claimed by defendants.

The trial court also found and held that the relationship between plaintiff and defendants was not a trust proposition because there was no trust agreement properly signed according to law.

The trial court further found and held that the legal services rendered by plaintiff to defendants running through the period of seven years were reasonably worth $1,000 per year, or a total of $7,000, and that plaintiff had the right to retain and apply on said attorney's fees all royalty payments received by him until his attorney's fees were fully paid.

The trial court further held that plaintiff had during the years 1937 to 1942, inclusive, received money for and on behalf of defendants in the total sum of $10,295.73, and that he had paid out to or on behalf of defendants during the period from February 25, 1933, to August 19, 1942, the total sum of $3,597.67, and that defendants were entitled to a credit of $666.66 on said attorney's fees for money paid to plaintiff leaving a balance due on said attorney's fees of $6,333.34; that after adjusting all equities between the parties there was due defendants the sum of $365.72 to be credited on the principal and interest due on the note and mortgage, and that after applying said credit there was due and owing by defendants to plaintiff the principal sum of $7,500 and $4,500 interest thereon from November 23, 1938, to the date of judgment, and $500 attorney's fees as provided by the note. Said sum was adjudged as a first and prior lien on the mortgaged premises and the lien

was ordered foreclosed. The two mineral deeds were canceled of record without prejudice to the rights of plaintiff to foreclose the lien of said mortgage upon all the rights of defendants in and to said real estate.

Defendants first contend that the trial court erred in finding and holding there was no trust relationship between the parties, and that there was, in fact, a trust relationship, and thereunder it was the duty of plaintiff, as trustee, to apply the money he held as such trustee on November 23, 1938, toward the satisfaction of the judgment of the Central National Bank of Okmulgee, and to apply that which he thereafter received as such trustee toward the satisfaction of the lawful balance of the mortgage indebtedness, and that the trial court erred in so holding. There is merit in the claim of error in finding and holding that there was no trust relationship between the parties. The evidence was insufficient to establish an express trust because there was no written instrument subscribed by the grantor or his agents, as required by 60 O. S. 1941 §136. But under said section a trust may arise by operation of law. In Maynard v. Taylor, 185 Okla. 268, 91 P. 2d 649, it is held:

"A resulting trust arises by operation of law where the legal estate in property is disposed of, conveyed, or transferred, but the intent appears or is inferred from the terms of the disposition, or from accompanying facts and circumstances, that the beneficial interest is not to go to or be enjoyed with the legal title."

The uncontradicted evidence, including the admission of plaintiff, clearly established and showed a resulting trust. We are not prepared to say, however, that under said trust arrangements it was the duty of plaintiff as such trustee to apply the trust funds coming into his hands to the satisfaction of the debt due the Central National Bank of Okmulgee, and to the mortgage indebtedness due plaintiff. The so-called "Trust Agreement" signed by plaintiff but not by the grantor, Walter W. Morton, shows clearly that the transfer of the mineral interest under the first mineral deed to plaintiff, Beidleman, as trustee, was for the purpose of paying all the obligations of Walter W. Morton and to provide an orderly manner in which such payments were to be made. The testimony of defendant Walter W. Morton is to the same effect. He testified, in part, that he talked to plaintiff, Beidleman, and Mr. Lytle, an attorney associated with plaintiff, Beidleman, and that Beidleman, or Lytle, "called me in and wanted me to do this because there was a judgment out against us, and it seemed like the people that had the judgment was about to levy on this land, understand, and sell the royalty and all, but if I would change this royalty to Mr. Beidleman, he would take that and after production came on he would distribute it evenly among all the folks—among all our creditors, and under those conditions why we signed it up." If it was the duty of the trustee to apply the trust funds to the payment of the indebtedness of Walter W. Morton, it was his duty to apply the same to the payment of all the creditors of Walter W. Morton pro rata.

The trial court did not err in refusing to hold that it was the duty of plaintiff, Beidleman, to apply the trust funds coming into his hands as trustee solely to the payment of the particular indebtedness of Central National Bank and the mortgage indebtedness due to plaintiff, Beidleman.

Defendants next contend that a trustee cannot offset his private demands against the claims of a beneficiary for the trust funds to which he is entitled, and that under said rule plaintiff had no authority and could not offset his claim for attorney's fees against the claim of the beneficiaries under the trust.

The general rule seems to be:

"A trustee cannot use a private demand against the trustor or the beneficiary as a setoff or counterclaim against the demand of the beneficiary

for trust property or funds to which he is entitled. Even the insolvency of the beneficiary does not justify such a set-off or counterclaim. The reason of the rule is that a trust is not a pledge to secure an obligation of the beneficiary to the trustee, and should give the trustee no superior rights or advantage over other creditors of the cestui que trust." 54 Am. Jur., Trusts, §583, p. 450.

However, we find no authority holding that a trustee may not under an agreement with the beneficiaries offset his private claim against the claims of the beneficiaries, where the parties are all sui juris, or competent to contract.

In the instant case, plaintiff claims to have had such an agreement with defendants. The evidence with reference thereto is somewhat in conflict, but we cannot say that the ruling of the court thereon is clearly against the weight of the evidence.

It is next contended that the note and mortgage transaction is usurious and that the court erred in not so holding. The evidence on that question is also in conflict. Defendants made a fair prima facie showing of usury. If their evidence is to be taken as true the transaction was apparently usurious. But Henry M. Beidleman, the son of plaintiff, and the party to whom defendants contend they caused the execution of the deed by Paul Stodt conveying the 80 acres of land, testified personally, directly and positively that the deed in question from Paul Stodt to the witness was not given to him in connection in any manner with the mortgage executed by William P. Morton and Walter W. Morton, and that the deed to the 80 acres of land to him was made in payment for legal services rendered by the witnesses individually and not as a member of the firm of Beidleman and Beidleman, and that plaintiff, George C. Beidleman, has never been paid and has never received any rents or profits from said land, and that he had no interest therein. We cannot say, as a matter of law, that the evidence shows that the transaction

was usurious, and we cannot say that the finding of the trial court that the transaction was not usurious is clearly against the weight of the evidence.

Defendants contend that the trial court erred in fixing the reasonable value of plaintiff's attorney's fees and in the amount of advancements made to defendant, and in offsetting same against the funds which plaintiff had received as trustee.

We have already held that the advancements made to defendants could be offset against the amount plaintiff had received as trustee by an agreement of the parties.

There was abundant evidence tending to prove the reasonable value of the legal services of plaintiff rendered to defendants to be $1,000 per year for the period of seven years, or a total of $7,000. The court found and held that there had been paid to plaintiff on his attorney's fees the sum of $666.66 for which credit was given to defendants. Defendants do not contend that there is error in the amount of credits. There was no error in fixing the value of the legal services of plaintiff.

The contention of error in fixing the amount of advancements made by plaintiff to defendants may be considered in connection with the contention that the judgment is excessive. The trial court found that plaintiff had paid out to or on behalf of the defendants the sum of $3,606.67 during the period from February 25, 1933, to August 19, 1944, consisting of ten items.

The first item is the sum of $25 dated February 21, 1933. Plaintiff testified that the $25 item arose by reason of fact that plaintiff had signed William P. Morton's note for $25 "which he never paid." Plaintiff did not testify that he had paid said note or that he had ever been called upon to pay it. It is clear that plaintiff is not entitled to that credit under the evidence.

As to the 2nd, 4th, 6th, 5th and 9th items there is no controversy.

As to the third item of $200 dated June 28, 1939, and the 10th item of $35 dated June 2, 1939, the evidence clearly shows that said items had been repaid.

As to the 7th item of $201.92 dated March 1, 1942 the record shows that plaintiff admitted that said item had been repaid to him.

As to the 8th item of $1,057 dated July 9, 1942 there is some doubt. To establish that item plaintiff introduced in evidence a check for said amount signed by plaintiff payable to Walter W. Morton and William P. Morton, endorsed by defendants and marked "Paid 7-11-42." Said check bears the notation of the word "loan" indicating that the check was given in connection with a loan made by plaintiff to defendants. Plaintiff testified that he might have a note representing said transaction. If plaintiff has a note it is clear that he is not entitled to the credit until he has surrendered the note for cancellation. Aside from the latter item of $1,057 it appears that the trial court allowed plaintiff credits to which he was not entitled in the sum of at least $461.92.

The trial court found and held that plaintiff received a total sum of $10-295.73 from the sale of oil produced from the lands covered by the trust agreement. Plaintiff introduced in evidence a statement of account, or accounting which shows that plaintiff received from said source the total sum of $10,051.48 during the period from August 10, 1936, to December 31, 1941. In addition thereto plaintiff admitted that he received from said source the sum of $1,096.76 during the year 1942, making a total amount received by plaintiff of $11,148.24.

The statement of account introduced by plaintiff shows that during the year 1936 plaintiff received the sum of $173.01. The trial court charged him with nothing for that year. Said statement or account further shows that during the year 1937 plaintiff received the sum of $1,165.76. The judgment of the trial court charged him with only $752.29 for that year.

The statement of account shows that during the year 1938 plaintiff received at least $2,178.56 (and probably as much as $2,381.63). The judgment of the trial court charges plaintiff with only $2,130.67 for that year. There is no discrepancy for the year 1939. The statement of account shows that during the year 1940 plaintiff received $1,923.26. The judgment charges him with only $1,914.26.

For the year 1941 there is a discrepancy of only 3c.

For the year 1942, not shown in the statement of account, but admitted by plaintiff, he received the sum of $1,096.76. The judgment of the court charges him with that sum for that year so there is no discrepancy there.

Therefore, the record shows that plaintiff received in trust funds at least $643.40 more than the trial court charged against him. This, added to the $461.92 errors in the amount of advancements made, makes the judgment excessive in at least the sum of $1,105.32.

Plaintiff, Beidleman's, contention that defendants were not entitled to recover on their claim for royalty payments received by plaintiff from the trust property, because of their failure to show compliance with the Intangible Tax Law (68 O.S. 1941 §§1501-1520) is without merit. Lumbermen's Supply Co. v. Neal, 189 Okla. 544, 119 P. 2d 1017.

The judgment is reversed, with directions to enter judgment as to the several items above set forth, as indicated herein, except as to the item of $1,057, as to which further action may be taken consistent with the views herein expressed.

WELCH, CORN, DAVISON, JOHNSON, and BINGAMAN, JJ., concur.