PAUL A. LYNCH, TRUSTEE, Plaintiff-Appellant, *v.* LLOYD V. BLAKE, et al., Defendants, and WILLIAM J. FERRIN and LUMAN N. NEVELS, JR., Defendants-Appellees

and

LUMAN N. NEVELS, JR., Plaintiff-Appellee, *v.* KONA COAST DEVELOPMENT CORPORATION, et al., Defendants, and LEWIS B. KEAN, Trustee, Defendant-Appellant

NO. 6000

MAY 10, 1978

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

Paul A. Lynch, in his capacity as trustee (hereinafter Lynch), and Lewis B. Kean (Kean), in his capacity as trustee for the Creditors and Stockholders of Kona Coast Development Corporation (KCDC), collectively appeal the judgment of the trial court, in Civil Nos. 2455 and 2497, consolidated for hearing, awarding money damages to appellees, Luman N. Nevels, Jr. (Nevels) and William J. Ferrin (Ferrin). The trial court rendered judgment in favor of Nevels and Ferrin against KCDC and also granted judgment in favor of Nevels against the creditors and stockholders of KCDC. The trial court further concluded that each of these judgments was to be paid out of the gross proceeds of the sale of that parcel of real property known as Ooma II, dated November 17, 1972, between Lynch and King Corporation, prior to payment to any other creditors and stockholders of KCDC.

We affirm in part, reverse in part and remand for further proceedings as stated hereinafter.

ISSUES

1. Whether the trial court had jurisdiction to consider the claims of Nevels and Ferrin against KCDC and/or the Creditors and Stockholders of KCDC and award them judgment against KCDC and/or the Creditors and Stockholders of KCDC.

2. Whether the trial court erred in declaring that Nevels and Ferrin are entitled to satisfaction of their judgments out of the monies to be received by Kean for the benefit of all the creditors and stockholders of KCDC prior to payment to any other creditors and stockholders of KCDC.

3. Whether the court had jurisdiction or authority to order the payment to Kean of 12% of the gross proceeds from the sale of Ooma II.

## STATEMENT OF THE CASE

Civil No. 2455, Lynch v. Blake, et al., a suit to remove cloud from title, was filed by Lynch on April 16, 1971. The defendants in Civil No. 2455 included KCDC, a foreign corporation, the creditors and stockholders of KCDC, Nevels, Ferrin, Kean, each individual who had at any time been an officer of KCDC, Harl Haas (KCDC's last known agent), and each known creditor or contributor to KCDC. The complaint identified the creditors and stockholders of KCDC as including persons known and unknown to the plaintiff. Except as to Nevels and Ferrin, who filed answers, the trial court granted Lynch a default judgment against each of the defendants.

In addition to his answer in Civil No. 2455, Ferrin filed a counterclaim and cross-claim. Ferrin served his claims on Lynch, as attorney for the Plaintiff in Civil No. 2455, but did not effect service of his claims upon KCDC. Ferrin alleged he was owed $4048.48 for legal work he had done on behalf of KCDC. In addition to his answer in Civil No. 2455, Nevels filed Civil No. 2497, Nevels v. Kona Coast Development Corporation, also naming the Creditors and Stockholders of KCDC as party defendants. Nevels claimed he was owed $30,491.31, together with interest, since he had repaid a loan made to KCDC by Stephen Harada. Nevels had signed the promissory note on October 11, 1967. When the note became due KCDC defaulted and during the period January 31, 1969 to September 25, 1969, Nevels made good KCDC's obligation to Harada. Pursuant to an order of the trial court, Nevels

effected service upon the creditors and stockholders of KCDC by mailing a certified copy of the complaint and attached documents to Kean, as Trustee for the creditors and stockholders of KCDC. Nevels served KCDC by leaving a certified copy of the complaint and attached papers with the Department of Regulatory Agencies.

Civil Nos. 2455 and 2497 were informally consolidated for purposes of trial and submitted to the trial court upon stipulated facts, a stipulated list of exhibits, and written argument. On January 7, 1975, the trial court filed its Findings of Fact and Conclusions of Law. The court adopted the facts as stipulated by the parties and amended from $4048.48 to $4098.48 the value of the legal services provided by Ferrin. The court also found that all of the exhibits stipulated to by the parties were ". . . true copies of authentic documents, the existence and contents of which are true fact." With respect to the issues before this court on appeal, the trial court concluded *inter alia* that:

1. It had jurisdiction over the parties including the Creditors and Stockholders of Kona Coast Development Corporation and over the subject matter of the claims presented in the pleadings in Civil No. 2455.

2. It had jurisdiction in Civil No. 2497 over KCDC and Lewis B. Kean as Trustee for the Stockholders and Creditors of KCDC and over the subject matter of the claim for satisfaction against the real property known as Ooma II.

3. The rights to purchase Ooma II under an agreement between the Kamitaki Trustees and Royal Hawaiian Management Corporation (RHMC) were lawfully assigned to KCDC by that unrecorded Agreement and Assignment dated May 27, 1967, by and between RHMC and KCDC.

4. Said rights were subsequently transferred and vested in Nevels as Trustee by that Assignment dated September 27, 1967.

5. Said rights were subsequently transferred and vested in the Creditors and Stockholders of KCDC by that Assignment and Resignation dated January 17, 1968.

6. Lynch holds title to Ooma II as Trustee under the terms of the Lynch Trust, dated October 29, 1968. Under the terms of said Trust, Kean holds a 12% beneficial interest in said Trust.

7. Kean holds said 12% undivided beneficial interest as Trustee for the benefit of all the Creditors and Stockholders of KCDC.

8. Luman N. Nevels, Jr., Plaintiff in Civil No. 2497, shall have judgment against Kona Coast Development Corporation and the Creditors and Stockholders of Kona Coast Development Corporation. There is no dispute that the money was paid by the Plaintiff as an accommodation endorser upon the note of KCDC. Judgment will be in the sum of $30,491.31 together with interest thereon at the statutory rate of 6% from and after September 25, 1969. The judgment shall also include costs and attorney's commission.

9. William J. Ferrin shall have judgment against Kona Coast Development Corporation for $4,098.48, together with interest at the 6% statutory rate from August 15, 1967, plus costs and attorney's commissions.

10. Luman N. Nevels, Jr. and William J. Ferrin shall be paid out of the proceeds of the Agreement of Sale of Ooma II dated November 17, 1972, between Paul A. Lynch, Trustee, and King Corporation. Payment in full to Nevels and Ferrin shall be made before payment to any other Creditors and Stockholders of KCDC.

The trial court amended the last of these conclusions by adding:

Twelve percent (12%) of all proceeds of the Agreement of Sale mentioned above in this paragraph shall be paid to Kean, as Trustee of a 12% undivided beneficial interest in the Lynch Trust, for the benefit of all the creditors and stockholders of Kona Coast Development Corporation.

## STATEMENT OF FACTS

On April 16, 1971, Civil No. 2455, Lynch v. Blake, et al.,

was filed in court to remove cloud from fee title to Ooma II held by Lynch. Suit was filed in accordance with HRS § 637-2(16).[1] Service of a certified copy of the complaint, summons, and court order upon KCDC, a Delaware corporation, was made by registered mail through the Secretary of State, State of Delaware, in accordance with HRS § 637-6(d).[2] Service on other parties were made by personal service or under the provisions of HRS § 637-6(b) and (c).[3]

---

[1] HRS § 637-2(16) reads:

(16) And shall have full equity jurisdiction, according to the usage and practice of courts of equity in all other cases where there is not a plain, adequate, and complete remedy at law.

Chapter 637 was repealed by Act 89, S.L.H. 1972. HRS § 637-2(16) has been incorporated into HRS § 603-21.7(a)(3).

Note: Applicable laws herein are those of 1971.

[2] HRS § 637-6(d) reads:

(d) Other service on nonresident. If any respondent was never a resident of the State, or has removed therefrom, and if the residence of such respondent be known, or is ascertained after publication of notice pursuant to subsection (b) of this section has been ordered, the judge may order that service be made upon the respondent (1) by making personal service upon him, either within or without the State, of a certified copy of the bill or petition and of the summons and of an order providing for such service, which order shall state the return day pursuant to such service or (2) by sending a certified copy of the bill or petition and of the summons and of such order, by registered mail, addressed to him, with request for return receipt, which service, evidenced by the receipt signed by the respondent and returned to the clerk of the court, shall be regarded as equivalent to service by publication, or in lieu thereof. Notwithstanding that the address of any such respondent may be known or may be ascertained as aforesaid, service upon the respondent may be made in the manner provided in subsection (b) of this section. In case the respondent is served in the manner provided in this subsection, then it shall not be necessary to also make service upon him by publication.

[3] HRS § 637-6(b) and (c) read as follows:

(b) Service by publication. If any respondent was never a resident of the State, or has removed therefrom, or if there are or may be unknown owners or claimants, having or who might have any legal or equitable estate, right or interest, vested or contingent, in the subject-matter of the proceeding or being or who might be otherwise concerned in the proceeding, and the facts shall appear, by affidavit or otherwise, to the satisfaction of the judge, he may order that service upon the respondent or the unknown owners or claimants, be made by publication of a notice of the pendency of the proceeding.

(c) Same, content. In any case of service by publication upon any designated respondent or respondents or any unknown owners or claimants pursuant to this section, the publication shall be made in some newspaper of general circulation in the judicial circuit in which the proceeding has been instituted, for such length

■■■■■■ ■
■■■■

On June 9, 1971, Civil No. 2497, Nevels v. Kona Coast Development Corporation and the Creditors and Stockholders of Kona Coast Development Corporation was filed in court wherein Nevels asserted his creditor's claim against KCDC and the creditors and stockholders of KCDC.

The complaint and summons were served by registered mail upon Kean, as trustee for the creditors and stockholders of KCDC, accepted by Kean on June 17, 1971, and a general appearance was entered by his amended answer and counterclaim.

KCDC was served by delivering a copy of the complaint, exhibits, and summons to the Director of Regulatory Agencies "in accordance with HRS Section 634-69".[4] The record

---

of time as the judge may deem reasonable, not less than once a week in four successive weeks, the last publication to be not less than twenty-one days prior to the return date stated in the notice, and the notice shall call upon the designated respondent or respondents, or the unknown owners or claimants, and also all persons generally, known or unknown, having or claiming any legal or equitable estate, right or interest, vested or contingent, in the subject-matter of the proceeding or otherwise concerned in the proceeding, to answer, demur, or otherwise plead to the bill or petition filed in the proceeding, which bill or petition shall be referred to in the notice, on or before a return day determined by the judge, which return day shall be stated in the notice, and the notice shall also contain a general statement and brief description of the nature and the subject-matter of the proceeding.

[4] HRS § 634-71(a)(1) and § 634-71(b) upon which Nevels relies as establishing the court's jurisdiction state:

*Acts submitting to jurisdiction.* (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits his person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of the acts:

(1) The transaction of any business within this State:

. . . .

(b) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by serving the summons upon the defendant outside this State, as provided in section 634-69, with the same force and effect as though summons had been personally served within this State.

. . . .

*HRS § 634-69* provides for service in cases of operation of motor vehicles. It provides that service shall be made by leaving a certified copy of the summons with the director of regulatory agencies or his deputy.

does not show that a designated person duly authorized to accept legal notice and process for KCDC continued to reside in the state at a designated business address as required by HRS § 418-1(1)(K) and § 418-14.[5]

The stipulated facts, with attachments, entered on the record was signed by Paul A. Lynch, attorney for Plaintiff Paul A. Lynch, Trustee, and Lewis B. Kean; Tom C. Leuteneker, attorney for William J. Ferrin; and Jason F. Oliver, attorney for Luman N. Nevels, Jr.

Mr. Harl Haas is described as an agent for KCDC, but the record fails to elaborate on his duties other than to state that he "would attempt to buy out any interest in KCDC of Messrs. Seidlitz, Niebuhr and Cobb . . ." and that he succeeded in "obtaining the releases, resignations and everything else necessary to remove Seidlitz, Niebuhr and Cobb from the affairs of KCDC." The record does not substantiate Mr. Haas' place of residence as being that of Hawaii.

---

[5] HRS § 418-1(1)(K) and § 418-14 read:

§418-1 Declarations; local agents; bonds. Every corporation or incorporated company other than an eleemosynary corporation formed or organized under the laws of any territory, possession or other state of the United States or of any foreign state or country which undertakes to do or carry on business in the State, or take, hold, demise, sell, or convey real estate situate therein shall file in the office of the director of regulatory agencies:

(1) A declaration sworn to on oath by two authorized officers of the corporation stating:

.   .   .   .

(K) The name and business address of the person residing within the State upon whom legal notice and process from the courts of the State, or notices from officials of the State, may be served.

.   .   .   .

§418-14 Withdrawal procedure; notice to creditors, etc.; taxes, etc.; service of process on. . . .

. . . No corporation or company may withdraw from this State without complying with the aforesaid conditions and until such *compliance service of legal notices and processes upon the person designated by it under section 418-1 or 418-2 shall be deemed sufficient service upon it, or if the designated person does not continue to reside in the State at the designated business address, service of the notices and processes upon the director shall be deemed sufficient service of the notices and processes upon it.*

This dispute revolves around various speculative transactions involving a parcel of real property, Ooma II, Tax Map Key No. 7-3-09-004, situated in North Kona, County and State of Hawaii. Prior to any of the events leading up to this dispute, Ooma II was owned by the Stillman Trust. Edward C. Hustace, Trustee of the Stillman Trust, sold the property to a hui composed of 26 couples, all of whom are listed as residents of Hawaii (Kamitaki Trustees). By a written contract consummated in early 1967, the Kamitaki Trustees agreed to sell Ooma II to RHMC, a Hawaii corporation, for $1,300,000. Long and Melone, Ltd., also a Hawaii corporation, was designated to act as escrow agent for the sale, which was to close on June 1, 1967. The agreement provided, however, that RHMC could, at its option, extend the closing date to October 1, 1967, by depositing additional funds into escrow. No further extensions of the closing date were allowed without the written permission of the Kamitaki Trustees. The agreement also provided that any failure to make necessary payments on time would permit the seller to cancel the agreement and retain the monies in escrow as damages; however, the seller could not cancel the agreement until 60 days after mailing notice of default to RHMC.

In May of 1967, RHMC assigned its rights to Ooma II under the contract with the Kamitaki Trustees to KCDC for $2,300,000. The promissory note and mortgage were to be executed subject to the approval of the law firm of Nevels and Chang, "as to form and sufficiency under the laws of the State of Hawaii". The Kamitaki Trustees were aware of the assignment and entered into an agreement with KCDC permitting a method of closing the sale alternate to the method agreed upon between the Kamitaki Trustees and RHMC. The memorandum of agreement between the Kamitaki Trustees and KCDC was signed by L. N. Nevels, Jr. for KCDC as "Its duly authorized corporate agent in Hawaii."

KCDC was registered as a Delaware corporation with "its principal office and place of business at Suite 920, 1441 Kapiolani Boulevard, Honolulu, Hawaii." (See n. 6 and 7, *infra.*) The record indicates, though, that its funding came not through the sale of stock, but from various other arrange-

ments with investors, mostly from California. Because of internal disputes among its officers, and because most of the corporate funds had been depleted gaining extensions for the closing date on KCDC's agreement to purchase another parcel of real property, the officers of KCDC met in September of 1967 to decide what could be done to protect KCDC's investments. The officers, on behalf of the corporation, decided to convey KCDC's right to purchase Ooma II to Nevels, as Trustee for all the present and future shareholders and creditors of KCDC.[6] The assignment to Nevels was recorded in the Bureau of Conveyances.

The record before us does not reveal what became of KCDC as a corporate entity subsequent to the September 1967 meeting. The parties agree that the corporation is defunct and that all corporate officials who have not been bought out or resigned have disappeared. The record does not show, however, that KCDC has been formally dissolved.

Since the last extension of the agreement with the Kamitaki Trustees was to expire on October 1, 1967, RHMC was concerned about the possibility of default. October 1st passed without the Kamitaki Trustees sending notice of default triggering the 60-day grace period. Notice was finally sent by the Kamitaki Trustees to RHMC on March 1, 1968. Default would occur on April 29, 1968.

---

[6] This conveyance was by means of an assignment signed by KCDC's president providing:

That KONA COAST DEVELOPMENT CORPORATION, a Delaware corporation, having its principal office at Suite 920, 1441 Kapiolani Boulevard, Honolulu, Hawaii 96814, does hereby assign, transfer and set over unto L. N. Nevels, Jr. whose residence and post office address is 4504 Kahala Avenue, Honolulu, Hawaii, *as trustee* for the stockholders and creditors of said Kona Coast Development Corporation all of the following described property:

All of the interest of the said corporation in and to Escrow N 4692 at Title Guaranty Escrow Services, Inc. at Honolulu, Hawaii and Escrow #2001 at Long & Melone, Ltd., Honolulu aforesaid, and all right, title and interest in and to all lands and interests in lands in said escrows described.

TO HAVE AND TO HOLD the said property above described, subject to all indebtednesses, liens, mortgages and encumbrances of record and otherwise, as Trustee for the shareholders and creditors, present and future, of said corporation, forever.

In the meantime, on January 17, 1968, Nevels reassigned the right to purchase Ooma II to the creditors and stockholders themselves, and resigned as Trustee for that group.[7] This assignment was also recorded. In addition, RHMC alleged that KCDC had breached its agreement by failing to close the sale prior to October 1, 1967, and thereby forfeited any right to purchase Ooma II. RHMC subsequently reassigned its rights under the RHMC-Kamitaki Trustees agreement to a group composed of Messrs. Degnan, Kasperson and Uhlmann (Uhlmann group).

During the month of April, shortly before default would occur, some of the creditors of KCDC, with Kean as their attorney, began negotiating with another group of investors represented by Lynch. Kean was attempting to sell the rights to Ooma II allegedly held by the creditors and stockholders of KCDC. Pursuant to this attempted transfer, Kean got most of the persons involved in KCDC to sign a Release and Covenant Not to Sue document, naming Kean as Trustee.[8] Ferrin did

---

[7] The Assignment and Resignation provided:

That L. N. NEVELS, JR., whose residence and post office address is 4504 Kahala Avenue, Honolulu, Hawaii, as TRUSTEE, does hereby, in consideration of ONE DOLLAR ($1.00) to him in hand paid, receipt whereof is hereby acknowledged, assign, transfer and set over unto the stockholders and creditors of KONA COAST DEVELOPMENT CORPORATION, a Delaware corporation, having its principal office and place of business at Suite 919, 1441 Kapiolani Boulevard, Honolulu, aforesaid, all of those certain interests in real property described in that certain ASSIGNMENT dated September 27, 1967, and recorded in the Bureau of Conveyances at Honolulu, aforesaid on September 28, 1967, in Liber 5808, Page 313.

TO HAVE AND TO HOLD the same unto said stockholders and creditors, their respective heirs, executors, administrators, successors and assigns as their respective interests shall appear, absolutely and forever.

AND the undersigned does hereby resign as such TRUSTEE for the stockholders and creditors of said corporation. '

[8] The documents provided in pertinent part that:

The undersigned represents that he (she) is a contributor, creditor, or has a claim against a certain corporate entity, known as "KONA COAST DEVELOPMENT CORPORATION"; and

·   ·   ·   ·

The undersigned understands that certain other individual, individuals, or firms desire to acquire the rights of KONA COAST DEVELOPMENT CORPORATION to purchase said property and, in consideration therefor, to grant to

not execute a Release and Covenant Not to Sue. Nevels did sign initially, but subsequently cancelled and revoked his execution of the Release document.

Though RHMC was in default, on May 1, 1968, the Kamitaki Trustees did not initiate any proceedings in order to terminate any interest RHMC may have had in the agreement between Kamitaki Trustees and RHMC. Notwithstanding the said status of RHMC, the Kamitaki Trustees deeded Ooma II to Lynch.

As a result RHMC filed a lawsuit in June, 1968, to determine who should actually have the rights to Ooma II. This lawsuit was resolved on November 8, 1968, by means of a document entitled "Mutual Release and Compromise" among virtually everyone involved in the numerous Ooma II

---

KONA COAST DEVELOPMENT CORPORATION, or a Trustee named on its behalf, a certain undivided interest in and to said property;

NOW, THEREFORE, in consideration of the undivided interest which may be granted by a purchaser of the rights of KONA COAST DEVELOPMENT CORPORATION to purchase the certain real property hereinabove set forth, and in consideration of similar instruments being executed by those described below, the undersigned does hereby waive, covenant not to sue, and releases the corporate entity known as "KONA COAST DEVELOPMENT CORPORATION" and all of the stockholders, agents, attorneys, trustees, officers, directors and all other persons or business entities which have to this date represented or participated in the said Corporation or who or which have claims against said Corporation from any liability whatsoever and does further covenant not to encumber, attach, or in any way seek to establish any claim of any nature whatsoever in or to the real property, known as "OOMA 2", located on the Island of Hawaii, State of Hawaii.

The undersigned does, by executing this instrument, agree to any action which KONA COAST DEVELOPMENT CORPORATION may take for the purpose of assigning its rights to purchase the property, known as "OOMA 2", in consideration of the granting by such assignee of an undivded interest of not less than twelve per cent (12%) to KONA COAST DEVELOPMENT CORPORATION, or to its Trustee, and the undersigned does further agree that LEWIS B. KEAN, ESQ. is hereby acceptable to the undersigned, as Trustee, to hold said undivided interest for disposition in accordance with the agreement of all the contributors and creditors whose identities are furnished to the Trustee, or, if they cannot agree, then the undersigned agrees that the matter will be presented to an independent arbitrator or arbitrators representing the American Arbitration Society, or otherwise, at the discretion of the Trustee for disposition, and the undersigned covenants and agrees to be fully bound by such disposition.

transactions, including the Stillman Trust, Kamitaki Trustees, RHMC, KCDC, Lynch, the Uhlmann group and Nevels. Kean signed this document in an undisclosed capacity for both KCDC and Lynch. Armed with the negotiated settlement, Lynch agreed to sell Ooma II to King Corporation.

OPINION

The record herein, especially, *inter alia*, the document entitled "Release and Covenant Not to Sue", raises several questions not presented to this court by the parties. Furthermore, the trial court has caused unnecessary confusion in the record by conducting an informal consolidated hearing of both Civil No. 2455 and No. 2497. We strongly advise the trial court to desist from conducting such proceedings.

However, the record, after careful and tedious review, is sufficient for the determination of certain of the issues presented, without resolution of the questions which were not presented.

I. WHETHER THE TRIAL COURT HAD JURISDICTION TO CONSIDER THE CLAIMS OF NEVELS AND FERRIN AGAINST KCDC AND/OR THE CREDITORS AND STOCKHOLDERS OF KCDC AND AWARD THEM JUDGMENT AGAINST KCDC AND/OR THE CREDITORS AND STOCKHOLDERS OF KCDC.

Lynch contends: (1) service of process by Nevels in Civil No. 2497 was insufficient to permit the court to obtain jurisdiction over KCDC or the creditors and stockholders of KCDC with respect to the claim of Nevels against them; (2) Nevels' complaint in No. 2497 fails to state a claim against the creditors and stockholders of KCDC; (3) Ferrin failed to effectuate proper service upon KCDC or state a claim against KCDC in Civil No. 2455 to permit the court to obtain jurisdiction over KCDC and award judgment to Ferrin against KCDC.

A. *Civil No. 2497*

(1) We are of the opinion that in Civil No. 2497 the trial court did acquire jurisdiction over KCDC, and we affirm the judgment awarded to Nevels against KCDC.

As stated in the assignment by KCDC, *supra* note 6, and the assignment and resignation by Nevels, *supra* note 7, KCDC, a Delaware corporation, had "its principal office and place of business at Suite 919 [or Suite 920], 1441 Kapiolani Boulevard, Honolulu, Hawaii." Further, the memorandum of agreement between the owners of the Ooma land and KCDC to allow for modification of a prior escrow arrangement between the same parties was signed by L. N. Nevels, Jr., for KCDC as "Its duly authorized corporate agent in Hawaii."

The contract to purchase land executed by KCDC involved property within the state, and the owners of the land, the beneficiaries of the Kamitaki Trust, the escrow agent, Long & Melone, Ltd., the assignors of the contract right to purchase the land, RHMC, were all residents of Hawaii. The promissory note and mortgage to be executed by KCDC was "subject to the approval of the firm of Nevels and Chang, 1441 Kapiolani Boulevard, Honolulu, Hawaii 96814, as to form and sufficiency under the laws of the State of Hawaii." *See generally Benham v. World Airways, Inc.*, 253 F.Supp. 588 (D. Haw. 1966). In addition, Mr. Harl Haas, as "agent for KCDC", was to "attempt to buy out any interest in KCDC of Messrs. Seidlitz, Niebuhr and Cobb . . ." and he succeeded in "obtaining the releases, resignations and everything else necessary to remove Seidlitz, Niebuhr and Cobb from the affairs of KCDC." We deem these facts sufficient to conclude that KCDC transacted business within the state within the meaning of HRS § 634-71(a)(1), *supra* note 4. Hence, the Director of the Department of Regulatory Agencies, pursuant to HRS § 634-69, was authorized to receive service of process on behalf of KCDC, and the court had proper jurisdiction to grant judgment for Nevels.

We are of the opinion HRS § 418-14, *supra* note 5, is not in conflict with the provisions of HRS § 634-71(b) under the facts of this case.

(2) In regards to the court's jurisdiction over the creditors and stockholders in Civil No. 2497, we agree with Lynch that the court lacked jurisdiction over the creditors and stockholders of KCDC to award Nevels a personal judgment against the creditors and stockholders of KCDC.

Nevels' contention that Kean, as trustee, was authorized to accept service of process for the "Stockholders and Creditors of KCDC", whereby the said stockholders and creditors became personally liable, is unsupported by the record. Nevels further relied upon the terms of HRS § 634-66.[9] However, said section does not support Nevels within the context herein. HRS § 634-66 clearly provides that "no judgment shall be enforceable against any individual or his individual assets . . . ."

There is no dispute that Kean, as assignee and trustee for the creditors and stockholders of KCDC held the 12% interest in issue in the instant case, for the benefit of the creditors and stockholders of KCDC, and was served with process. A general assignment for the benefit of creditors, and in this case, stockholders also, creates an express trust, *Wilson & Co. v. Phillips*, 221 Ala. 603, 606, 130 So. 219, 221 (1930), in which legal title passes to the assignee as trustee, *Lam Yip v. Ching Sing*, 5 Haw. 589, 591 (1886); *International Brown Drilling Corporation v. Ferguson Trucking Company, Inc.*, 141 Colo. 250, 254, 347 P.2d 773, 776 (1959); *Ephraim v. Metropolitan Trust Company of California*, 28 Cal.2d 824, 172 P.2d 501 (1946), *Boyum v. Jordan*, 146 Minn. 66, 72, 178 N.W. 158, 161 (1920). The creditors and stockholders are the beneficiaries, as cestuis que trustent, *Ahlo v. Tai Lung*, 9 Haw. 272, 275

---

[9] HRS § 634-66 provides:

Organizations and associations, service of process on; judgment. When two or more persons associate and act, whether for profit or not, under a common name, including associating and acting as a labor organization or employer organization, whether the common name comprises the names of the persons or not, they may sue in or be sued by the common name, and the process shall be served on any officer, trustee, or agent of the association if he can be found, or if no such officer, trustee, or agent can be found as shown by the return of the serving officer, then upon any one or more members of the association. Any such service constitutes service upon the association. *The judgment in such cases shall accrue to the joint or common benefit of and bind the joint or common property of the association*, the same as though all members had been named as parties to the action. *No judgment shall be enforceable against any individual or his individual assets unless (1) he has been joined and served as an individual party to the action*, or (2) the judgment is so enforceable pursuant to section 634-34, or any other law. (Emphasis added.)

(1893), *Lam Yip v. Ching Sing, supra; Southeast Portland Lumber Co. v. Heacock,* 128 Or. 248, 257, 275 P. 28, 31 (1929); *Boyum v. Jordan, supra* at 178 N.W. 151-62. But service of process upon a trustee does not constitute service of process upon the creditors and stockholders absent a showing that Kean was duly authorized to receive service of process on behalf of the creditors and stockholders for personal liability. *Victory Carriers, Inc. v. Hawkins,* 44 Haw. 250, 352 P.2d 314 (1960). *Accord, Tropic Builders, Ltd. v. Naval Ammunition Depot,* 48 Haw. 306, 402 P.2d 440 (1965). "It is elementary law that a judgment binding on the person of the defendant may not be rendered in an action classified as *in personam* without some form of personal service sufficient to satisfy the requirements of due process of law". *United States Rubber Company v. Poage,* 297 F.2d 670, 673 (5th Cir. 1962). Clearly, there was no effective service of process to impose personal liability upon the creditors and stockholders of KCDC.

Above all, Nevels failed to state a claim against the creditors and stockholders sufficient to hold the creditors and stockholders jointly and/or severally liable for his claim as a creditor.

This court is not aware of any law, based on the record herein, which would sustain the trial court's conclusion awarding judgment to Nevels against the creditors and stockholders of KCDC.

### B. *Civil No. 2455*

We agree with Lynch that Ferrin failed to effectuate service of process upon KCDC, a foreign corporation. Also, the parties before this court do not dispute the fact that Ferrin rendered legal services to KCDC for the amount claimed by Ferrin, and that Ferrin did file a counter claim and cross-claim, but said claims were served upon Lynch, plaintiff's attorney, and not upon KCDC.

Clearly, service of process upon Lynch or Kean, who are not agents or trustees of KCDC to accept service of process, does not constitute proper service of process upon KCDC.

Thus, the trial court lacked jurisdiction to grant judgment in favor of Ferrin and against KCDC.

In concluding as we do, we recognize the state of the record to be, that Civil No. 2455 and Civil No. 2497 were informally consolidated only for the purpose of trial. However, the two cases remained separate in all other respects, including the subject of proper service and of jurisdiction. Even though in Civil No. 2455 Lynch invoked the court's jurisdiction over all the parties who were served with process, with respect to their claims, which jurisdiction remains unchallenged on appeal and which we do not question, this did not give the court jurisdiction over the parties and claims raised in Civil No. 2497.

II. THE TRIAL COURT ERRED IN DECLARING THAT NEVELS AND FERRIN ARE ENTITLED TO SATISFACTION OF THEIR JUDGMENTS OUT OF THE MONIES TO BE RECEIVED BY KEAN FOR THE BENEFIT OF ALL THE CREDITORS AND STOCKHOLDERS OF KCDC PRIOR TO PAYMENT TO ANY OTHER CREDITORS AND STOCKHOLDERS OF KCDC.

We are unaware of any principle of law which supports the court's conclusion of law No. 10, *supra,* giving priority for payment in full to Nevels and Ferrin. Unless the trust instrument, or the law, *Collector of Taxes of Lowell v. Slafsky,* 332 Mass. 700, 127 N.E.2d 309 (1955), provides otherwise, a general assignment for the benefit of creditors entitles each creditor to share *pro rata* in the dividends. *Waterhouse v. Hitchcock,* 6 Haw. 131 (1874); *Morton v. Beidleman,* 205 Okla. 350, 237 P.2d 421, 425 (1951); *Milbank v. J. C. Littlefield, Inc.,* 310 Mass. 55, 36 N.E.2d 833 (1941). *See In re Los Angeles Land and Investments, Ltd.,* 282 F.Supp. 448 (D. Haw. 1968), where the court, in a bankruptcy proceeding, concluded that absent special circumstances general unsecured creditors are to be treated equally as to payment of claims.

III. THE COURT LACKED JURISDICTION OR AUTHORITY TO ORDER THE PAYMENT TO KEAN OF 12% OF THE GROSS PROCEEDS FROM THE SALE OF OOMA II BY LYNCH TO KING CORPORATION.

We are of the opinion that the trial court did acquire jurisdiction over the res of the trust held by Kean, as trustee.

(a) Service of process upon Kean, as trustee, was made in Civil No. 2455. No one among the parties herein questions the validity of said service of process. Judgment of default was entered against Kean, as party defendant.

As trustee, Kean is the legal title holder of the res of the trust covering the said 12% interest; thus, jurisdiction over the res of the trust in connection with Lynch's litigation to remove cloud of his fee title has been acquired by the court. *Hardy v. Hardy*, 5 Cal.Rptr. 110, 181 Cal.App.2d 317 (1960), 91 A.L.R.2d 284; *Baskin v. Montedonico*, 26 F.Supp. 894 (D.Tenn. 1939), *affirmed*, 115 F.2d 837 (6th Cir. 1940); 15 A.L.R. 2d 610, Trust — Jurisdiction of Suit.

However, we are faced with an inadequate and sparse record.

(b) Remand: A review of the record shows that no hearing has been held on the contention of the appellees that Kean, as trustee, violated his fiduciary duties in accepting less than 12% of the said gross proceeds of the sale of Ooma II by Lynch to King Corporation; neither has there been a hearing on whether 12% of the said gross proceeds of the sale or less is correct or not. The record contains insufficient factual basis upon which the trial court can sustain its conclusion of law No. 10, as amended. This is so, even though the court did acquire jurisdiction over the res of the Kean trust.

We, therefore, remand for further proceedings for resolve of both of the above issues.

We are of the further opinion that a proper proceeding should be initiated to determine who are the creditors and stockholders of KCDC and the priority and proportion of payment each is entitled to share in the said 12% interest held by Kean as trustee.

Affirmed in part, reversed in part, and remanded in accordance with this opinion.

*Ronald W. K. Yee (Case, Stack, Kay, Clause & Lynch* of counsel) for appellants, *Paul A. Lynch and Lewis B. Kean.*

*Tom C. Leuteneker (Carlsmith, Carlsmith, Wichman and Case* of counsel) for appellee, *William J. Ferrin.*

*Jason F. Oliver* for appellee, *Luman N. Nevels, Jr.*